THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MIGUEL MORALES, Defendant-Appellant.

First District (4th Division)   No. 1—94—2892

Opinion filed June 6, 1996.

Rita A. Fry, Public Defender, of Chicago (Cheryl K. Lipton, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Cho, and Adam Monreal, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Defendant Miguel Morales (Morales) appeals his conviction for first degree murder. On appeal, defendant argues that: (1) the State's use of a witness' prior inconsistent statements denied defendant a fair trial; (2) the State failed to prove defendant guilty beyond a reasonable doubt; (3) the jury verdict was coerced by the conditions of its deliberations; and (4) the trial court abused its discretion in sentencing defendant to a 45-year term. We affirm.

On February 2, 1993, Hector Olague was shot and killed. At trial, the State presented two eyewitnesses who described the events leading up to the shooting. Raphael Robinson (Robinson) stated that on the afternoon of February 2, 1993, he observed a brown car with three Hispanic males drive by him. Robinson stated that the driver was wearing a black-hooded sweatshirt and the front-seat passenger was wearing a Georgetown pullover. The passengers were flashing gang signs to members of a rival gang, the Latin Kings, across the street. The Latin Kings responded with their own gang signs and threw a brick at the car. The car then drove away.

Robinson stated that the same car returned about 10 minutes later. Robinson testified that he saw someone from the car running down the alley. The Latin Kings ran towards the alley. Robinson looked down the alley and saw two of the passengers from the car, defendant and another man. Robinson testified that he saw defendant pull something from his waist. Someone called out Robinson's name and Robinson turned away just as five shots were fired. Robinson dropped to the ground and looked back down the alley. Robinson saw defendant with a gun in his hand.

Shawn Hendricks (Hendricks) also witnessed the incident. Hendricks saw a crowd gather in the parking lot adjacent to the alley. He looked down the alley and saw two Hispanic males, one with a black-hooded sweatshirt and the other with a Georgetown pullover. Hendricks stated that three or four Latin Kings ran after the two males in the alley. Hendricks then testified that he saw defendant step out from a gangway and pull a gun from his waist. Hendricks stated that

defendant crouched down low and shot the gun towards the Latin Kings.

Shortly thereafter, the police arrived at the scene. The officers took statements from a number of the people present, including Robinson and Hendricks. On February 10, 1993, Detective John Halloran questioned John Willer (Willer) about the incident. Willer told police that on February 3, 1993, he spoke with defendant on the telephone. Defendant told Willer that defendant's sister had been jumped by some girls; that defendant went to the girls' high school and beat the girls; that defendant was kicked out of his house; and that defendant and a friend went to Curie High School and "busted caps" with some Latin Kings. When Willer told defendant that the victim lived on Willer's block, defendant informed him that he killed the victim in retaliation for a friend's death. Assistant State's Attorney Sherry Biedar (ASA Biedar) met with Willer and took his statement.

On February 11, 1993, both Robinson and Hendricks identified defendant as the shooter from a lineup. That same day Willer testified before the grand jury. Willer's testimony was virtually identical to the statement he gave to the police and ASA Biedar the previous day. On November 17, 1993, the police contacted Willer again. Detective Thomas Finnelly (Finnelly) informed Willer that phone records did not support Willer's statement as to when the phone calls with defendant were made. Willer told Finnelly that he merely confused the dates, that the conversation actually took place on February 5, 1993, and that the rest of his statement was true.

At trial, Willer changed his testimony. Willer claimed that the police mistreated him, coercing his statement against defendant. The defense offered phone records to show that Willer's conversation with defendant could not have occurred when Willer originally claimed it had. The trial court permitted the State to publish Willer's grand jury testimony as substantive evidence. In addition, the State offered ASA Biedar's testimony that Willer's statements were made voluntarily. Over defense objection, the trial court allowed ASA Biedar to publish to the jury, as substantive evidence, Willer's written statement, which he signed in her presence.

The jury began deliberations in the late afternoon of Friday March 18, 1994. Approximately five hours later, the jury notified the judge that it could not reach a unanimous verdict. The judge consulted with the parties and, over defense objection, offered a *Prim* instruction. Later that evening, the judge called the jurors out and had them sequestered overnight. The jury reconvened the next morning. At approximately 4:30 p.m. that afternoon, the jury reached a verdict. The jury found defendant guilty of first degree murder. The

jury was polled and the verdict was unanimous. After considering factors in aggravation and mitigation, the trial court sentenced defendant to 45 years' imprisonment.

■ Defendant first argues that the State's substantive use of Willer's prior inconsistent statements denied him due process and a fair trial. We disagree. Section 115—10.1 of the Code of Criminal Procedure of 1963 provides for the substantive admissibility of prior inconsistent statements in criminal cases. 725 ILCS 5/115—10.1 (West 1992). Paragraphs (a) and (b) of that section require that the prior statement be inconsistent with the offered testimony and that the witness be subject to cross-examination. Once these requirements are satisfied, the court must determine if the statements fall within paragraph (c)(1) or (c)(2) of section 115—10.1. A paragraph (c)(1) statement is a statement made under oath at a trial, hearing, or other proceeding, such as a grand jury proceeding. A paragraph (c)(2) statement is a statement the witness wrote, signed or acknowledged under oath which "narrates, describes, or explains an event or condition of which the witness had *personal knowledge*." (Emphasis added.) 725 ILCS 5/115—10.1(c)(2) (1992). This personal knowledge requirement is a key distinction between paragraph (c)(1) and paragraph (c)(2) statements. In the instant case, the State contends that Willer's grand jury testimony was admissible under paragraph (c)(1), while his written statement taken by Assistant State's Attorney Biedar was admissible under paragraph (c)(2) of section 115—10.1.

■ Initially, we find that the grand jury testimony was properly admitted under paragraph (c)(1). Willer's trial testimony differed dramatically from his grand jury testimony. In addition, Willer was available for cross-examination. Finally, the statement satisfies the paragraph (c)(1) requirement that the witness' prior inconsistent statement be made under oath at a judicial proceeding. Therefore, Willer's grand jury testimony was admissible under section 115—10.1. However, we disagree with the State's contention that Willer's statements to ASA Biedar were admissible under paragraph (c)(2) of that section.

■ We acknowledge that Willer's statements to ASA Biedar satisfy paragraphs (a) and (b) of section 115—10.1. The flaw in the State's reasoning is the contention that Willer's statements satisfy the personal knowledge requirement under paragraph (c)(2). The personal knowledge requirement is not satisfied when the witness merely testifies as to what another claims to have done. *People v. Saunders*, 220 Ill. App. 3d 647, 580 N.E.2d 1246 (1991). Rather, the witness must have personally observed the events which are the subject matter of the other's comments before they can be admitted

under paragraph (c)(2). *Saunders*, 220 Ill. App. 3d 647, 580 N.E.2d 1246. Such statements carry an indicia of reliability because a witness is less likely to repeat another's statement if he witnessed the event and knows the statement is untrue. R. Steigmann, *Prior Inconsistent Statements as Substantive Evidence in Illinois*, 72 Ill. B.J. 638 (1984).

In the instant case, Willer's statement consisted of what defendant claimed happened on the afternoon of February 2, 1993. Willer did not witness the events that defendant described in the telephone conversation. As such, the personal knowledge requirement under paragraph (c)(2) is not satisfied.

We find that the trial court improperly admitted Willer's statement as read by ASA Biedar as substantive evidence. However, we find that the error was harmless. Willer's statements to ASA Biedar were still admissible to impeach Willer's credibility at trial. See 735 ILCS 5/2—1102 (West 1992). In addition, the jury considered virtually the same evidence substantively with the admission of Willer's grand jury testimony. In the absence of any evidence of prejudice, we decline to reverse.

Next, defendant argues that the trial court erred in admitting Willer's entire statement, instead of that portion which was truly inconsistent. Only the inconsistent portions of a prior inconsistent statement are admissible into evidence. *People v. Lawrence*, 268 Ill. App. 3d 327, 644 N.E.2d 19 (1994). In the instant case, the trial court allowed the State to introduce not only Willer's testimony that defendant "busted caps" with the Latin Kings, but also that defendant beat a girl who jumped his sister, defendant was involved with a gang, the shooting at Curie High School was retaliatory, defendant was kicked out of his house, and the victim lived down the street from Willer. Defendant claims only Willer's statement that defendant "busted caps" with the Latin Kings should have been admitted.

■ As a general rule, prior consistent statements are made inadmissible by the hearsay rule. *People v. Borges*, 127 Ill. App. 3d 597, 469 N.E.2d 321 (1984). However, a court need not make a "quantitative or mathematical analysis" of whether a witness' entire statement is inconsistent under section 115—10.1 for the entire statement to be admissible. *People v. Salazar*, 126 Ill. 2d 424, 456-58, 535 N.E.2d 766, 779-80 (1988). Rather, it is within the sound discretion of the trial court to determine whether or not the testimony is admissible under section 115—10.1. *Salazar*, 126 Ill. 2d 424, 535 N.E.2d 766. In his previous statements, Willer alleged that defendant implicated himself in the shooting as well as making the statements concerning his gang involvement and his motive for committing the

crime. At trial, Willer claimed that the damaging conversation with defendant never took place. These inconsistencies are significant. As such, we find that the trial court did not err in admitting this information into evidence. *People v. Steele*, 265 Ill. App. 3d 584, 637 N.E.2d 733 (1994).

While we agree that some of the information contained in Willer's prior statements was not truly relevant to the inquiry before the court, we find that the trial court did not abuse its discretion in admitting the entire statement. *People v. Salazar*, 126 Ill. 2d 424, 456-58, 535 N.E.2d 766, 779-80 (1988). In addition, we find that if the admission of the entire statement constituted error, we find that its effect was harmless. *People v. Saunders*, 220 Ill. App. 3d 647, 580 N.E.2d 1246 (1991).

Finally, defendant claims that the trial court needed to consider constitutional factors prior to admitting Willer's prior inconsistent statements. Defendant claims that in addition to satisfying the requirements of the statute, this court's decision in *People v. Johnson*, 255 Ill. App. 3d 547, 626 N.E.2d 1073 (1993), requires us to make an additional inquiry before such evidence is admissible. Defendant argues that the court must make an initial finding of reliability which is satisfied only by applying guidelines developed in federal cases. As such, defendant is essentially arguing that the current Illinois statute is potentially unconstitutional.

■ In enacting section 115—10.1, the legislature determined that prior inconsistent statements should be admitted substantively because: (1) the prior statement was made closer in time to the event in question than the statement at trial; (2) parties need protection from turncoat witnesses; (3) the witness is available for cross-examination, eliminating hearsay concerns of unavailability; and (4) the admission of such statements furthers the search for truth in a criminal proceeding. R. Steigmann, *Prior Inconsistent Statements as Substantive Evidence in Illinois*, 72 Ill. B.J. 638 (1984). In addition, the statute incorporates safeguards that foster reliability, such as the requirements that the witness be available for cross-examination and that the statement be made under oath or be the subject of the witness' personal knowledge.

The United States Supreme Court has already found that a California statute permitting the substantive use of prior inconsistent statements survived a sixth amendment challenge. See *California v. Green*, 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970). We note that the California statute did not include the safeguards present in the Illinois statute. In *Green*, however, the Supreme Court stated in a footnote that "considerations of due process *** might prevent convic-

tions where a reliable evidentiary basis is totally lacking." 399 U.S. at 163 n.15, 26 L. Ed. 2d at 500 n.15, 90 S. Ct. at 1938 n.15.

In 1976, the Fifth Circuit Court of Appeals adopted guidelines to determine whether the use of prior inconsistent statements as substantive evidence comported with due process. *United States v. Leslie*, 542 F.2d 285 (5th Cir. 1976). The fifth circuit held that the admission of such statements was constitutional if: (1) the declarant was available for cross-examination; (2) the statement was made shortly after the events related and was transcribed; (3) the declarant knowingly waived his right to silence; (4) the declarant admitted making the statement; and (5) there was evidence corroborating the statement. *Leslie*, 542 F.2d 285. The seventh circuit adopted those guidelines in 1982, when reviewing a prior inconsistent statement admitted under a Wisconsin statute which permitted the substantive use where "[t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement." See *Vogel v. Percy*, 691 F.2d 843, 844 n.2 (7th Cir. 1982), citing Wis. Stat. § 908.01(4) (1980). We note that both the fifth circuit's decision in *Leslie* and the seventh circuit's decision in *Vogel* predate the Illinois legislature's enactment of section 115—10.1, which became effective July 1, 1984.

■ We find that the Illinois statute adequately protects the defendant's constitutional rights. The Illinois legislature clearly intended the statute to be the only inquiry necessary in determining whether to admit prior inconsistent statements. See R. Steigmann, *Prior Inconsistent Statements as Substantive Evidence in Illinois*, 72 Ill. B.J. 638 (1984). Defendant's sixth amendment right of confrontation was protected as Willer was subject to full and effective cross-examination. In addition, we find that the due process considerations raised in *Green*, specifically in "prevent[ing] convictions where a reliable evidentiary basis is totally lacking," are fully addressed when the requirements of the Illinois statute are satisfied. See *Green*, 399 U.S. at 163 n.15, 26 L. Ed. 2d at 500 n.15, 90 S. Ct. at 1938 n.15. We find that these requirements safeguard the rights of the parties and supply the reliable evidentiary basis deemed necessary under *Green*.

Furthermore, we find that a witness' claim of coercion does not necessarily render the admission of such a statement unconstitutional. Rather, a mixed question of law and fact is presented. The court should first make certain that there is a sufficient evidentiary basis from which the trier of fact could find that the statements were made voluntarily. *People v. Johnson*, 255 Ill. App. 3d 547, 626 N.E.2d 1073 (1993). However, it is for the jury to determine whether the statements were in fact made voluntarily. *Johnson*, 255 Ill. App. 3d 547, 626 N.E.2d 1073. In the instant case, the State presented the

testimony of two assistant State's Attorneys and several police officers supporting the State's claim that Willer's statement was made voluntarily. This evidence provided a sufficiently reliable basis for the admission of Willer's prior statements. It was for the jury to assess the credibility of Willer's trial testimony of coercion. Therefore, we find that Willer's prior inconsistent grand jury testimony was properly admitted and did not violate defendant's right to due process.

Next, defendant argues that the State failed to prove him guilty beyond a reasonable doubt. Upon review, our relevant inquiry is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found that the State proved defendant guilty beyond a reasonable doubt. *People v. Young*, 128 Ill. 2d 1, 538 N.E.2d 453 (1989). We will affirm the conviction unless the evidence presented by the State is so incredible or insubstantial that it raises a reasonable doubt as to defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). However, we will not substitute our judgment for that of the jury where the evidence is merely conflicting. *People v. Silas*, 185 Ill. App. 3d 920, 541 N.E.2d 1239 (1989).

■ In viewing the evidence in a light most favorable to the State, we find that the evidence was not so incredible or insubstantial as to raise a reasonable doubt as to defendant's guilt. While defendant argues that the testimony of the State's witnesses contained inconsistencies, resolution of conflicting evidence is to be made by the jury, not a reviewing court. *People v. Slim*, 127 Ill. 2d 302, 537 N.E.2d 317 (1989). The State offered the testimony of two eyewitnesses identifying defendant as the shooter. Despite defendant's attacks on their credibility, this testimony is sufficient to sustain defendant's conviction. See *People v. Stringer*, 52 Ill. 2d 564, 289 N.E.2d 631 (1972). Therefore, we affirm the defendant's conviction.

Defendant then claims that the trial judge coerced the guilty verdict by refusing to declare a hung jury after the jury had deliberated a substantial amount of time and failed to reach a verdict. Defendant argues that several factors indicate that the guilty verdict was coerced. Specifically, defendant contends that: (1) the jurors were anxious to complete deliberations due to the lateness of the hour, the fear of being sequestered, and one juror was running low on medication; (2) the jurors were forced to deliberate long after the *Prim* instruction was read; and (3) the length of the deliberations was too long in comparison to the complexity of the case.

Initially, we note that the record does not indicate that a juror was running low on medication or that some were experiencing

extreme anxiety. As such, the unsupported statements of defense counsel are not properly before this court. See *People v. Morris*, 229 Ill. App. 3d 144, 593 N.E.2d 932 (1992). In determining whether a verdict was coerced, we must consider the totality of the circumstances. *People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601 (1972), *cert. denied*, 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731 (1973). We will not rule in defendant's favor unless it can be determined from the record that the trial court abused its discretion in requiring the jury to deliberate further. *People v. Daily*, 41 Ill. 2d 116, 242 N.E.2d 170 (1968).

■ When considering the totality of the circumstances, we find that the deliberations were not so extensive in light of the complexity of the issues to be resolved by the jury. See *People v. Brown*, 48 Ill. App. 3d 632, 362 N.E.2d 820 (1977). We do not believe that the length of time between the *Prim* instruction and the jury's verdict supports defendant's claim of coercion. See *People v. Jackson*, 26 Ill. App. 3d 618, 325 N.E.2d 450 (1975). Finally, we find that the possibility of further sequestration was not presented in a threatening manner so as to coerce the jury. See *People v. Baggett*, 115 Ill. App. 3d 924, 450 N.E.2d 913 (1983). As such, we decline to reverse the defendant's conviction on these grounds.

Finally, defendant argues that the trial court abused its discretion in sentencing defendant to a 45-year prison term. Absent an abuse of discretion, reviewing courts will not alter a sentence imposed by the trial court. *People v. Perruquet*, 68 Ill. 2d 149, 368 N.E.2d 882 (1977). A trial court abuses its discretion in imposing a sentence that is disproportionate to the seriousness of the offense. *People v. Smith*, 81 Ill. App. 3d 764, 401 N.E.2d 1017 (1980). A reviewing court will uphold the sentence that reflects the seriousness of the crime and the defendant's rehabilitative potential. *People v. Daniels*, 113 Ill. App. 3d 523, 447 N.E.2d 508 (1983).

■ A review of the record clearly indicates that the trial court considered both the serious nature of the crime, defendant's rehabilitative potential and other factors in mitigation in imposing its sentence. We find that the trial court did not abuse its discretion in imposing this sentence. As such, we affirm the sentence.

Affirmed.

CAHILL and O'BRIEN, JJ., concur.