**Terrance JOHNSON, Petitioner–Appellant,**

v.

**Odie WASHINGTON, or his successor, Director, Department of Corrections of the State of Illinois, and Richard B. Gramley, or his successor, Warden of the Pontiac Correctional Center, Respondents–Appellees.**

**No. 96–1899.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1996.

Decided July 9, 1997.

Alison Edwards, argued, Office of the Cook County Public Defender, Chicago, IL, for Petitioner–Appellant.

Rita M. Novak, Margaret M. O'Connell, argued, Office of the Attorney General, Chicago, IL, for Repondents–Appellees.

Before BAUER, RIPPLE, and MANION, Circuit Judges.

BAUER, Circuit Judge.

Petitioner Terrance Johnson was convicted in Illinois in 1991 for murder and armed robbery, *People v. Johnson*, 255 Ill.App.3d 547, 193 Ill.Dec. 522, 626 N.E.2d 1073 (1st Dist.1993), *appeal denied*, 155 Ill.2d 570, 198 Ill.Dec. 548, 633 N.E.2d 10 (1994) (*Johnson I*), and in 1992 for attempted murder and armed robbery, *People v. Johnson*, 264 Ill. App.3d 1000, 202 Ill.Dec. 228, 637 N.E.2d 767 (1st Dist.), *appeal denied*, 157 Ill.2d 512, 205 Ill.Dec. 176, 642 N.E.2d 1293 (1994) (*Johnson II*). He is currently serving consecutive sentences of 80 years on the 1991 conviction and 30 years on the 1992 conviction. After Johnson exhausted his state court remedies, he filed a petition for a writ of habeas corpus in the District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 2254. The district court denied Johnson's petition on March 28, 1996. We affirm.

## Background

Johnson does not challenge the statement of facts set forth in either of the Illinois Appellate Court opinions in this case. They are therefore entitled to a presumption of correctness. Early in the morning of March 22, 1989, a Concord Oil gas station at 440 West 87th Street in Chicago was robbed. A brown or tan-colored Bonneville carrying three or four passengers pulled into the station. The front passenger was Johnson, and the driver was Lester Boston. Johnson jumped out of the car brandishing a semiautomatic handgun and told the attendant to give his money to Boston. Johnson then ran to the door of the gas station office, kicked the door in, and demanded more money from the office attendant. Johnson exchanged gunshots with the gas station's security officer, got back into the car, and fled the scene.

Approximately half an hour later on the same morning, Cleotha Adams was shot and killed while working at a Unocal gas station at 8510 South Ashland Avenue in Chicago, which is located about two miles from the Concord Oil station.[1] Terrance Johnson, Lester Boston, and Demetrius Broadwater ("Demetrius") were all charged with murder and armed robbery in connection with the Unocal incident and attempted murder and armed robbery in connection with the Concord Oil incident. Separate but simultaneous trials were held for the two incidents for each of the three defendants. Johnson was tried before a jury in both cases.

This habeas appeal concerns the appropriateness of the admission of the testimony of Tremmel Broadwater ("Tremmel") as substantive evidence in both *Johnson I* and *Johnson II*. Although only a few years younger than Demetrius, Tremmel was Demetrius' nephew and had lived with Demetrius for his entire life. Tremmel was also a friend of both Johnson and Boston. Tremmel was nineteen years old at the time of the trials.

On Friday, April 14, 1989, four police officers looking for Demetrius went to Tremmel's home at 9035 South Racine in Chicago. Tremmel told the officers where they could find Demetrius. Tremmel, however, was arrested on outstanding warrants for burglary and theft, and the officers confiscated a sawed-off shotgun. Tremmel was taken to Area Two Chicago Police Headquarters,

---

1. Although the Unocal incident occurred chronologically later than the Concord Oil incident, it was tried first and is therefore referred to as *Johnson I*. The Concord Oil incident is referred to as *Johnson II*.

where he was placed in a small interview room and asked questions about the Unocal shooting. After several hours, Tremmel signed a written statement. In the statement, Tremmel admitted that he was in the car on March 22, 1989 with Johnson, Boston, and Demetrius, and that he witnessed the robbery and shooting at the Unocal station. Tremmel remained at Area Two until Monday, April 17, 1989, when he appeared before a grand jury at 26th and California and gave testimony consistent with his written statement.

At both of Johnson's trials, however, Tremmel testified that he had no knowledge of, or involvement in, the Unocal incident, and he claimed that he was home in bed at the time of the shooting. The State then presented Tremmel with his prior written statement and grand jury testimony. Tremmel acknowledged his signature and admitted that he signed the statement and gave consistent grand jury testimony, but claimed that he had been coerced by the police into doing so. Tremmel then claimed that he had no personal knowledge regarding the shooting, but that he had agreed to sign the statement and testify before the grand jury in order to avoid being arrested for murder or for the federal offense of possessing a sawed-off shotgun. He testified that the police composed the statement and coerced him into signing it by promising not to charge him with murder or with other crimes and by promising to assist him on his other outstanding warrants. He further testified that, in order to insure he would testify before the grand jury, he was kept at Area Two against his will from Friday afternoon, April 15, 1989, until Monday morning, April 17, 1989, at which time the police transported him to testify before the grand jury.

Tremmel testified at trial that only once did he attempt to contact anyone to claim that his written statement and grand jury testimony were untrue. On December 17, 1990, he was served a subpoena by Assistant State's Attorney ("ASA") Cassidy at the Markham courthouse. Tremmel testified that he told ASA Cassidy that his grand jury testimony was untrue, but that ASA Cassidy threatened to charge him with murder if he changed his testimony. At trial, Tremmel's testimony about this occurrence was contradicted by testimony of ASA Cassidy who testified that, on December 17, he did not threaten Tremmel or have any conversation regarding his testimony.

On February 5, 1991, Tremmel was interviewed by Johnson's defense counsel in preparation for trial. At that time, Tremmel told defense counsel that his statement and grand jury testimony were obtained as the result of police coercion. Tremmel then signed a new statement recanting his earlier testimony and claiming that he had no knowledge as to whether any of the defendants were involved in the Unocal incident.

Because Tremmel's trial testimony was inconsistent with his prior written statement and grand jury testimony, the State moved to have the prior statement and the grand jury testimony admitted as substantive evidence pursuant to § 5/115–10.1 of the Illinois Criminal Code. *See* 725 ILCS 5/115–10.1 (1992) (setting forth criteria for the admissibility of prior inconsistent statements). Three Chicago police detectives testified in support of this motion, describing the events of the April 14, 1989 weekend. Their rendition differed from Tremmel's in that they testified that Tremmel was never placed under arrest, threatened with arrest, or promised leniency in return for cooperation. Rather, as one detective testified, Tremmel voluntarily agreed to assist the police and he stayed at Area Two at his own request and was not kept against his will. This detective stated that Tremmel was free to roam between several different rooms at Area Two, that he was given food and use of a phone, that he called his residence and his mother, and that his mother brought him a change of clothes while he was at the station.

After the officers testified, ASA Wasik, who took Tremmel's statement at Area Two, testified in support of the motion to admit the written statement. ASA Wasik said that Tremmel cooperated with him and that he did not witness any threats being made to Tremmel at Area Two. ASA Wasik also testified that he prepared Tremmel's three-page written statement based upon Tremmel's responses during questioning. ASA Wasik tes-

tified that during the early morning of April 15, 1989, Tremmel agreed to testify before the grand jury, and the police discussed how Tremmel would be transported to 26th and California. He testified that Tremmel said that he did not want to go home and that it was agreed that he could stay at Area Two until Monday, April 17, 1989.

After ASA Wasik's testimony and after argument outside the presence of the jury, the trial court made the following conclusions regarding Tremmel's statement:

> [T]here is reason which a trier of fact could find that the statement from Broadwater, Tremmel, that is, was not the product of his free will. If that be the case, then their statement probably under *McBounds* could not come in because it lacks reliability.

> Now, I haven't seen any cases directly on point of this area of the law. *McBounds* is the closest case that comes to it, but I get from *McBounds* that a statement—this has nothing to do with enforcing that witness' Fourth Amendment right. It has to do with indicia of right around the statement, and if there isn't some reliability around the statement, then it is blatant hearsay.

> I have concluded that on that issue, the jury is now fully apprised of the circumstances around giving of the statement, and if they conclude that the statement is, in fact, the product of coercion, I'm sure the lawyers will tell him [sic] what to do with it.

> *So as to that issue, I'm going to allow the statements to come into evidence.*

(R. 1022–23) (emphasis added). After some further discussion, defense counsel asked the judge to clarify his decision:

> MR. HILL: Just so the record is clear, was it your statement or it's based on the evidence presented that it is your belief there was some coerciveness at the police station?

> THE COURT: *I think there's coercion, but the jury may not, and the ultimate determination is for this jury to make sense [sic] they have all of the evidence*

*surrounding the circumstances of it being given.*

(R. 1028–29) (emphasis added).

The trial court consequently determined that Tremmel's written statement satisfied the requirements of § 115–10.1 and could be admitted as substantive evidence. ASA Wasik then published the statement to the jury.

ASA Buckley, who had examined Tremmel before the grand jury, also testified concerning the conditions under which Tremmel testified before the grand jury. Another discussion was held before the trial judge and outside the presence of the jury, in which the court stated:

> The jury knows the circumstances under which Tremmel Broadwater's statements were made and they will be able to assess the credibility of it [sic].

> What I am unable to do is to say categorically, as a matter of law, that the statement is so infirmed that it should not be admitted into evidence, it's worthless. Although it is close, it is close, these are hearsay statements and 115–10.1 makes those hearsay statements admissible, because it presupposes, under the circumstances which are enumerated in the statute, that it imports some degree of reliability.

> But the testimony in this case tends to almost wholly destroy the credibility that is envisioned, or the reasonable indicia of credibility that is envisioned in the statute for the admissibility of other witnesses' hearsay statements.

> The argument has been made to me by the State and if I am misstating it, it is not intentional, but as I understand the argument, it is simply because of 115–10, all that need be done is to qualify the statement under the literal terms of 115–10.1, to make it admissible, and I think that's incorrect. I think that is incorrect. I think that would be constitutionally incorrect because I do not think that the constitution [sic] will countenance a conviction based entirely upon hearsay, where there are no inditia [sic] of reliability and, as I indicated, I think the reliability in this case has been certainly substantially chal-

lenged, if not destroyed, and the reason that I say if not destroyed, because that's ultimately a question of fact for the jury to have to decide in this case.

(R. 1114–15). The transcript of the grand jury testimony was then also published to the jury.

In addition to the direct evidence provided by Tremmel's statement and grand jury testimony, the State presented circumstantial evidence tending to show that Johnson had an opportunity to commit the crime. This circumstantial evidence established that Johnson was involved in the crime at the Concord Oil station, which is located two miles from the Unocal station. Johnson put on only one witness in his defense. This witness was a police officer who testified that, during his investigation of the robbery at the Concord station, there were some discrepancies between the descriptions witnesses gave him of the man with the gun and the driver of the car and the actual features of the defendants.

The admission of the written statement and the grand jury testimony occurred in much the same way in *Johnson II;* the State offered and the court admitted both the statement and the testimony as substantive evidence. There was additional direct evidence against Johnson in *Johnson II,* however, because witnesses identified Johnson as the gunman.

In both *Johnson I* and *Johnson II,* the trial judge instructed the jury regarding Tremmel's statement and grand jury testimony as follows:

The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind ordinarily may be considered by you only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom.

However, you may consider a witness' earlier inconsistent statement as evidence without this limitation when the statement was made under oath at a proceeding.

Or the statement narrates, describes, or explains an event or condition the witness had personal knowledge of, and the statement was written or signed by the witness.

It is for you to determine whether the witness made the earlier statement, and, if so, what weight should be given to that statement.

In determining the weight to be given to an earlier statement, you should consider all of the circumstances under which it was made.

A jury found Johnson guilty of armed robbery and murder in *Johnson I* and attempted murder and armed robbery in *Johnson II.* In *Johnson I,* the court found Johnson eligible for the death penalty, but sentenced him to consecutive sentences of 60 years and 20 years for the convictions. In *Johnson II,* the court sentenced him to concurrent 30–year terms for each offense.

Johnson filed direct appeals of both the 1991 conviction and the 1992 conviction. The 1991 conviction was affirmed by the Illinois Appellate Court on September 3, 1993. *People v. Johnson,* 255 Ill.App.3d 547, 193 Ill. Dec. 522, 626 N.E.2d 1073 (1st Dist.1993). A petition for rehearing was denied on December 13, 1993, and the Supreme Court of Illinois denied leave to appeal in 1994. 155 Ill.2d 570, 198 Ill.Dec. 548, 633 N.E.2d 10 (1994). The 1992 conviction was affirmed by the Illinois Appellate Court on July 8, 1994. *People v. Johnson,* 264 Ill.App.3d 1000, 202 Ill.Dec. 228, 637 N.E.2d 767 (1st Dist.1994). The Supreme Court of Illinois denied leave to appeal that conviction as well. 157 Ill.2d 512, 205 Ill.Dec. 176, 642 N.E.2d 1293 (1994). Johnson did not file a petition for post-conviction relief pursuant to the Illinois Post–Conviction Hearing Act, 725 ILCS 5/122–2.1, but that does not bar federal habeas review. *See Gomez v. Acevedo,* 106 F.3d 192, 195–96 (7th Cir.1997).

In both direct appeals, Johnson argued that the admission of Tremmel's statements in his jury trials pursuant to § 115–10.1 violated due process where the trial court made explicit findings that the statements were the result of police coercion and, therefore, unreliable. The Illinois Appellate Court reached this issue on the merits in *Johnson I,* but in

*Johnson II* the appellate court did not reach the merits because it found that the doctrine of *stare decisis* compelled it to follow its reasoning from *Johnson I. See Johnson II,* 264 Ill.App.3d at 1006, 202 Ill.Dec. at 232, 637 N.E.2d at 771. Johnson then filed this habeas petition on May 19, 1995 in the district court, attacking both his 1991 and 1992 convictions. On habeas, Johnson again argues that his due process rights were violated when the jury was allowed to consider an uncharged accomplice's recanted, uncorroborated custodial statement even though the trial court suggested that the statement was coerced and unreliable. As to *Johnson I,* Johnson seeks an unconditional writ of habeas corpus. As to *Johnson II,* he seeks issuance of the writ contingent on whether the State can prove its case against him without the benefit of Tremmel's statement or grand jury testimony. The district court denied the petition for habeas corpus on March 28, 1996. We affirm.

### Analysis

As noted above, Tremmel's statement and grand jury testimony were admitted pursuant to Illinois Criminal Code § 115–10.1, which provides in full:

§ 115–10.1. Admissibility of Prior Inconsistent Statements. In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at a trial, hearing, or other proceeding, or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding, or

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording.

Nothing in this Section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement was not recorded or otherwise fails to meet the criteria set forth herein.

725 ILCS 5/115–10.1 (1992).

Johnson does not contend that § 115–10.1 is unconstitutional on its face or that the formal requirements of the section were not met in this case. Indeed, the formal requirements of this section have been met both for Tremmel's written statement and for his subsequent grand jury testimony. Both the statement and the grand jury testimony were inconsistent with Tremmel's testimony at Johnson's trials, and Tremmel was subject to cross-examination at trial. Paragraphs (a) and (b) are thus satisfied. The grand jury testimony clearly satisfies paragraph (c)(1). The written statement satisfies paragraph (c)(2) because Tremmel signed the statement and it narrates, describes, or explains an event of which Tremmel had personal knowledge—Tremmel admitted that he was physically present in the car. *Cf. People v. Morales,* 281 Ill.App.3d 695, 700–01, 217 Ill.Dec. 170, 174, 666 N.E.2d 839, 843 (1st Dist.1996) (finding that the (c)(2) personal knowledge requirement was not met because the witness only testified as to what another person claimed to have done).

Johnson's argument, rather, focuses on the reliability of the statements admitted into evidence. He contends that because the trial judge made a finding that Tremmel's statements were coerced, their admission as evidence of Johnson's guilt violated his right to due process of law.[2] That is, Johnson be-

---

**2.** We are mindful that this case presents the question of possible coercion in connection with the statement of a witness as opposed to coercion in connection with the statement of a defendant.

lieves that, in order for a prior inconsistent statement to be admitted as substantive evidence, in addition to meeting the formal requirements set forth in § 115–10.1, the trial court must make an additional determination that the prior inconsistent statements are reasonably reliable and trustworthy before the jury may consider them. As he did in state court, Johnson contends that coerced statements are inherently unreliable and, therefore, should not be admitted pursuant to this section. We believe a more precise statement of the issue is whether Johnson was deprived of a fair trial when the trial judge reserved for the jury the ultimate decision of whether Tremmel's statements were coerced; in other words, whether the trial judge properly allowed the jury to determine how much weight should be given to the statements.

Initially, we note that Illinois law does not require more than formal compliance with the requirements under § 115–10.1 before a prior inconsistent statement may be admitted as substantive evidence. *See People v. Pursley*, 284 Ill.App.3d 597, 607–08, 220 Ill.Dec. 237, 244–45, 672 N.E.2d 1249, 1256–57 (2d Dist.1996), *appeal denied*, 172 Ill.2d 562, 223 Ill.Dec. 199, 679 N.E.2d 384 (1997) (citing *People v. Carlos*, 275 Ill.App.3d 80, 84, 211 Ill.Dec. 799, 655 N.E.2d 1182 (1995)); *People v. Morales*, 281 Ill.App.3d 695, 703, 217 Ill. Dec. 170, 176, 666 N.E.2d 839, 845 (1st Dist. 1996). Illinois courts have also refused to allow a challenge to the admission of statements that have met the formal requirements of § 115–10.1 but which, nonetheless, might be considered unreliable because they violate the Confrontation Clause. *See, e.g., People v. McBounds*, 182 Ill.App.3d 1002, 1013, 130 Ill.Dec. 14, 22, 536 N.E.2d 1225, 1233 (1st Dist.1989).

Therefore, Illinois law does not provide Johnson with a peg onto which to hang his legal hat. As noted by the *Johnson I* court,

none of the Illinois cases cited by Johnson discussed the § 115–10.1 issue from a due process standpoint. *Johnson I*, 255 Ill. App.3d at 558, 193 Ill.Dec. at 530, 626 N.E.2d at 1081.[3] However, the court also suggested, but rejected, the notion that beyond meeting the statutory requirements, *federal* law *might* require an additional inquiry to be made to show that the admission of a prior inconsistent statement satisfies constitutional due process requirements. *Id.* The court was referring to our case of *Vogel v. Percy*, 691 F.2d 843 (7th Cir.1982).

In *Vogel v. Percy*, we demonstrated that the admissibility of a prior inconsistent statement for the truth of the matter asserted pursuant to a Wisconsin statute did not necessarily violate the Constitution. *Id.* at 846 (quoting *California v. Green*, 399 U.S. 149, 163 n. 15, 90 S.Ct. 1930, 1938 n. 15, 26 L.Ed.2d 489 (1970)). In *Vogel*, we adopted guidelines set forth by the Fifth Circuit in *United States v. Leslie*, 542 F.2d 285 (5th Cir.1976), to determine whether the substantive use of a prior inconsistent statement could comport with due process. *Id.* at 846–47. These guidelines provide that a prior inconsistent statement can be admitted as substantive evidence where: (1) the declarant was available for cross-examination; (2) the statement was made shortly after the events related and was transcribed promptly; (3) the declarant knowingly and voluntarily waived the right to remain silent; (4) the declarant admitted making the statement; and (5) there was some corroboration of the statement's reliability. *Id.* (quoting *Leslie*, 542 F.2d at 290–91). We indicated that the adoption of the guidelines safeguarded due process by preventing convictions where a "reliable evidentiary basis is totally lacking." *Id.* at 847 (quoting *Green*, 399 U.S. at 163 n. 15, 90 S.Ct. at 1938 n. 15). Both *Vogel* and *Leslie* were decided before the enactment of

---

Although it is clear that excluding a defendant's involuntary confession under the Fourteenth Amendment is premised on a "complex of values," and not merely on the probable unreliability of the confession, *Jackson v. Denno*, 378 U.S. 368, 385–86, 84 S.Ct. 1774, 1785–86, 12 L.Ed.2d 908 (1964), the same values are not necessarily implicated when dealing with the statement of a witness.

**3.** Since *Johnson I*, the Illinois Appellate Court has addressed Johnson's argument from a due process standpoint. See *People v. Morales*, 281 Ill.App.3d 695, 703, 217 Ill.Dec. 170, 176, 666 N.E.2d 839, 845 (1st Dist.1996), discussed *infra*.

§ 115–10.1, which became effective on July 1, 1984. Some years later, in *Ticey v. Peters,* 8 F.3d 498 (7th Cir.1993), we indicated that the *Vogel* factors were not meant to be absolutes. *Ticey,* 8 F.3d at 501 ("A look at *Leslie* illustrates that the factors were not meant to be a litmus test for the admissibility (and reliability) of a prior inconsistent statement.").

A brief application of the *Vogel* factors indicates that the admission of Tremmel's statement and grand jury testimony was proper. First, Tremmel was available for cross-examination at Johnson's trial, and, in fact, was vigorously cross-examined in both the *Johnson I* and the *Johnson II* trials. As to the second factor, Tremmel's statement was taken approximately three weeks after the date of the crimes. Although this may be considered a relatively long period, we find it significant that the statement was immediately transcribed after it was given. Johnson does not dispute this factor, and we see no other indication that the statement was somehow affected or fabricated due to the passage of time between the events and the statement. The fourth factor of the *Vogel* test is also clearly met in that Tremmel never disputed that he had made the prior statement or that he testified before the grand jury in accordance with the statement. Finally, the circumstantial evidence admitted against Johnson was significantly corroborative of Tremmel's written statement and grand jury testimony so as to satisfy the fifth factor.

In *Johnson I,* the Illinois Appellate Court considered the third *Vogel* factor, whether Tremmel knowingly and voluntarily made the statements, to be the linchpin of Johnson's argument. With this in mind, the *Johnson I* court framed the issue as follows:

> In the present case defendant does not question the fact that guidelines (1), (2), (4) and (5) were met. He claims, however, that because Tremmel testified at trial that the prior statements were the product of coercion, there was no showing that the prior statements were knowingly and voluntarily made and, for that reason, they were admitted in violation of his due process rights.

*Johnson I,* 255 Ill.App.3d at 558, 193 Ill.Dec. at 530, 626 N.E.2d at 1081. The court went on to note that it disagreed that the claim of coercion would automatically prevent a prior inconsistent statement from being admitted under § 115–10.1. The court said that "[t]o so hold would allow any witness to defeat the constitutionality of admitting a prior statement by making a claim of coercion." *Johnson I,* 255 Ill.App.3d at 558–59, 193 Ill.Dec. at 530, 626 N.E.2d at 1081.

The court then concluded that the issue presented a mixed question of law and fact, and summarized:

> [B]efore a prior inconsistent statement is admissible for constitutional purposes, the trial court must make a finding that there is sufficient evidentiary basis from which a jury could find that the declarant's prior statements were knowing and voluntary. The resolution of that question, however, is an issue of fact for the jury to determine. *Johnson I,* 255 Ill.App.3d at 559, 193 Ill. Dec. at 530, 626 N.E.2d at 1081. The court went on to determine that despite having reservations, the trial judge did find a sufficient evidentiary basis to allow the evidence to go to the jury, and, from there, the jury could determine how much weight to afford it. The court found that, despite Tremmel's later assertion that he had *no* personal knowledge of the information provided in the statement and to the grand jury, the ASAs' and police officers' testimony that Tremmel's statements were given voluntarily provided a sufficiently reliable basis for the admission of the evidence, and that it was up to the jury to decide whether to believe Tremmel or the State's witnesses. *Id.*

In its thorough and well-reasoned opinion in *Johnson I,* the Illinois Appellate Court was not unmindful of the many comments made by the trial court regarding its belief that the statements were obtained through coercion. The appellate court also took judicial notice of statements made by the *same* trial judge in co-defendant Boston's bench trial when he excluded Tremmel's statement and grand jury testimony.[4] The Illinois Ap-

---

4. In Boston's bench trial, in which the same trial

judge was the trier of fact, the judge excluded

pellate Court's interpretation of the trial court's actions and statements during Boston's trial bears repeating here:

> It is important to note, however, that the trial judge, when ruling on the admissibility of the prior statements, stated that there was evidence from which triers of fact could find that the statements were not coerced, but that he believed them to be coerced in that there was a *quid pro quo* or promise of leniency given in exchange for Tremmel's cooperation. The court did not exclude Tremmel's testimony from substantive evidence. Rather, in Boston's trial, the judge chose to disregard it and chose not to rely on Tremmel's testimony to form the basis for Lester Boston's conviction. The trial judge then went on to determine that there was sufficient evidence, without Tremmel's testimony, to support conviction for Lester Boston. *The trial court was very clear, however, that his consideration of Tremmel's evidence was in his capacity as the trier of fact and that the weight that he gave Tremmel's testimony was a determination of fact, not of law.*

*Johnson I*, 255 Ill.App.3d at 560, 193 Ill.Dec. at 531, 626 N.E.2d at 1082 (emphasis added). The appellate court in *Johnson I* found no basis for overturning the jury's determination that Tremmel's recanted § 115–10.1 statements were more credible than his trial testimony, especially in light of the jury's option to believe the ASAs' and police officers' testimony that Tremmel's statements were voluntary. The appellate court also noted that Tremmel's earlier testimony was not fraught with internal inconsistencies and discrepancies, but, rather, was corroborated in large part by the other circumstantial evidence admitted against Johnson. *Johnson I*, 255 Ill.App.3d at 560, 193 Ill.Dec. at

532, 626 N.E.2d at 1083. Moreover, although Tremmel had testified that he signed the statement as a result of police coercion, the court correctly noted that Tremmel never adequately explained how he would have been able to give grand jury testimony that was consistent with the written statement if he did not have any personal knowledge of the crime. *Johnson I*, 255 Ill.App.3d at 559, 193 Ill.Dec. at 531, 626 N.E.2d at 1082. The *Johnson I* court concluded its discussion by finding that Tremmel's prior inconsistent statements were properly admitted both under § 115–10.1 and in accordance with constitutional mandates set forth generally and in *Vogel*. *Johnson I*, 255 Ill.App.3d at 560–61, 193 Ill.Dec. at 532, 626 N.E.2d at 1083.

We accept and agree with the Illinois Appellate Court's interpretation of the trial court's actions. Johnson has not identified any law that entitles him to relief. In our independent review, we do not believe that admitting Tremmel's written statement or grand jury testimony pursuant to § 115–10.1 contradicted any federal law or unreasonably applied the rule from any federal case. We also find that the Illinois courts reasonably interpreted the facts in light of the evidence presented in this case.[5]

As noted above, as of the decision in *Johnson I*, Illinois courts had not discussed this issue from a due process vantage point. *See Johnson I*, 255 Ill.App.3d at 558, 193 Ill.Dec. at 530, 626 N.E.2d at 1081. However, in *People v. Morales*, the Illinois Appellate Court recently decided this precise issue against Johnson's position. In *Morales*, the defendant argued that the trial court must consider constitutional due process factors before admitting a prior inconsistent statement pursuant to § 115–10.1. *Morales*,

---

Tremmel's statements because of his factual finding that they were coerced. In Boston's trial, the judge found Tremmel's testimony "in this court's opinion totally useless" (R. 1360), rejected "the explanations given by the police officers in this case regarding the handling of Tremmel Broadwater" (R. 1360), and found that "the statement [sic] that he made were the product of coercion and thus they have no credibility at all" (R. 1365). The district court also considered these statements from Boston's trial, but denied Johnson his requested habeas relief nonetheless.

5. We are aware that the United States Supreme Court has recently decided that the new provisions of Chapter 153 of the Anti–Terrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214, codified in 28 U.S.C. § 2254(d) (Supp. 1997), are not applied retroactively to pending cases. *See Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Our analysis, therefore, is under the old *de novo* standard of review.

281 Ill.App.3d at 702–04, 217 Ill.Dec. at 175–76, 666 N.E.2d at 844–45. In support of his due process argument, the defendant in *Morales* cited *Johnson I*, and argued that *Johnson I* required this additional inquiry. The defendant argued that the trial court must initially determine the reliability of a statement by using the guidelines set forth in federal case law, specifically *Leslie* and *Vogel*. The Illinois Appellate Court responded by first explaining the rationale behind the Illinois legislature's adoption of § 115–10.1. The legislature believed that prior inconsistent statements should be admitted substantively because: (1) the prior statement was made closer in time to the event in question than the statement at trial; (2) parties need protection from turncoat witnesses; (3) the witness is available for cross-examination, eliminating hearsay concerns of unavailability; and (4) the admission of such statements furthers the search for truth in a criminal proceeding. *Morales*, 281 Ill.App.3d at 702, 217 Ill.Dec. at 175, 666 N.E.2d at 844 (citing Robert J. Steigmann, *Prior Inconsistent Statements as Substantive Evidence in Illinois*, 72 Ill. B.J. 638 (1984)). The *Morales* court also noted that there were other safeguards incorporated into the statute to foster reliability, such as the requirements that the witness is available for cross-examination and that the statement is made under oath or connected to the witness' personal knowledge. *Id.* The *Morales* court therefore concluded that § 115–10.1 adequately protects constitutional rights independently, and that the Illinois legislature "clearly intended the statute to be the only inquiry necessary in determining whether to admit prior inconsistent statements." *Morales*, 281 Ill.App.3d at 703, 217 Ill.Dec. at 175–76, 666 N.E.2d at 844–45. More specifically, the *Morales* court found that the requirements in the statute adequately safeguarded both the due process rights addressed in *Green* (and disputed in this case) and rights under the Confrontation Clause.

Additionally, *Morales* indicated that a witness' claim of coercion does not necessarily render admission of a statement unconstitutional. 281 Ill.App.3d at 703, 217 Ill.Dec. at 176, 666 N.E.2d at 845. Rather, the court found that a claim of coercion presents a mixed question of law and fact as to which the court "should first make certain that there is a sufficient evidentiary basis from which the trier of fact could find that the statements were made voluntarily." *Id.* (citing *Johnson I*). The court reiterated *Johnson I*'s approval of the notion that the jury must determine whether the statements were in fact made voluntarily. The *Morales* court concluded its analysis by noting that two ASAs and several police officers had testified as to the voluntary nature of the witness' statement, and this testimony provided the requisite "sufficient[ ] reliable basis" to satisfy due process in the admission of the statements. 281 Ill.App.3d at 704, 217 Ill.Dec. at 176, 666 N.E.2d at 845.

We agree with the discussion of the due process issue in *Morales*, and find that the trial judge's actions in this case sufficiently protected Johnson's due process rights. Although the judge expressed grave doubt about the reliability of Tremmel's prior inconsistent statements, he did determine as a matter of law that they could be presented to the juries. The juries, as the triers of fact, then made credibility determinations about the evidence and found Johnson guilty. As a court sitting in collateral review, we are unwilling to second-guess the fact-finding of seated Illinois juries. Because the juries in these cases returned guilty verdicts, we conclude that they weighed Tremmel's statements against the testimony of the ASAs and the police officers and concluded that Tremmel's statements were indeed voluntary and had a sufficient reliable basis.

Johnson encourages us to adopt a bright-line rule such that where the trial judge finds that a statement is the product of coercion, regardless of whom the coerced party is, then § 115–10.1 cannot operate to allow the evidence to go to the jury. We decline to adopt such a rule, particularly where, although the trial judge's comments indicate that the issue of reliability presented a close call, he still opted to send the evidence to the jury and he did not exercise his right to direct a verdict of acquittal.

### Conclusion

In sum, we do not find error in the admission of Tremmel's written statement and grand jury testimony. The trial court did not find the evidence unreliable as a matter of law. The court merely found that the technical requirements of the Illinois evidentiary statute were met, and therefore the jury, as the trier of fact, should determine how much weight to afford the evidence. We decline to disturb the juries' credibility determinations. We therefore AFFIRM the district court's denial of Johnson's petition for a writ of habeas corpus.