THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRANCE JOHNSON, Defendant-Appellant.

First District (5th Division)   No. 1—92—3127

Opinion filed July 8, 1994.

Rita A. Fry, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Bette Plass, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

After a jury trial defendant Terrance Johnson (Johnson) was convicted of attempted murder and two counts of armed robbery for his involvement in the March 22, 1989, robbery of the Concord Oil gas station located at 440 West 87th Street in Chicago. He was later sentenced to concurrent terms of 30 years' imprisonment on each

offense, to be served consecutively to an 80-year sentence he received in a prior case.

In the prior case, as in the case presently before this court, Johnson and codefendants Lester Boston and Demetrius Broadwater were charged with robbing a gas station on March 22, 1989. The prior case, however, involved the Unocal gas station located at 8510 South Ashland, which is about two miles from the Concord Oil gas station involved here. The Unocal gas station robbery took place shortly after the Concord Oil gas station robbery and in that case a gas station attendant, Cleotha Adams, was shot to death in the course of the robbery. This court reviewed the appeal in the prior case and affirmed Johnson's armed robbery and murder convictions, as well as the 80-year sentence imposed, in an opinion issued September 3, 1993, and modified December 3, 1993. Leave to appeal to the Illinois Supreme Court was denied in April 1994. See *People v. Johnson* (1993), 255 Ill. App. 3d 547, 626 N.E.2d 1073, *appeal denied* (1994), 155 Ill. 2d 570.

In the present appeal Johnson raises five issues which, he argues, demonstrate trial error necessitating reversal of his present convictions and a new trial. However, some of the issues raised here have already been addressed in the earlier appeal. The issues in this appeal are: (1) whether Johnson's due process rights were violated by the admission of Tremmel Broadwater's recanted statement and grand jury testimony as substantive evidence, (2) whether evidence of other crimes was erroneously admitted, (3) whether Johnson was denied a fair trial by the inclusion of unnecessary details of other crimes, (4) whether a jury instruction misled the jury on the permissible use of other crimes evidence, and (5) whether Johnson was denied a fair trial due to prosecutorial misconduct.

We find no merit to any of the arguments advanced by Johnson and affirm his convictions and sentence. Before addressing the issues raised, however, we shall briefly recount the evidence that was presented to the jury in the trial in this case.

Johnson's trial in this matter commenced on March 16, 1992. During the opening statements made by both the State and the defense, the jury was fully apprised that it would be hearing evidence with regard to two gas station robberies. The State then called its first witness, Tremmel Broadwater. Tremmel, who was the nephew of a codefendant, Demetrius Broadwater, and a friend of defendants Lester Boston and Johnson, testified that he had been 17 years old on March 22, 1989. On April 14, 1989, police officers came to his home looking for Demetrius, who was not home. The officers took Tremmel to Area Two Chicago police station where, some hours later, he signed

a written statement in which he admitted that he had been present in a tan-colored car with Demetrius, Lester Boston and Terrance Johnson in the early morning hours of March 22, 1989. According to the statement, they pulled into a Unocal gas station at Johnson's direction. Johnson, who possessed a .25-caliber automatic handgun, shot the gas station attendant in the back as he attempted to run away and then went through the attendant's pockets to remove his money. Tremmel also testified that he remained at the police station until Monday, April 17, 1989, at which time he was transported by the police to the courthouse at 26th and California to testify before the grand jury with regard to the events related to the Unocal gas station robbery.

Although Tremmel acknowledged his signature on the statement and admitted that he had testified under oath at the grand jury, at Johnson's trial Tremmel denied any knowledge of the Unocal gas station robbery, claiming that he had been home in bed at the time the robbery took place. He further claimed that he was coerced into signing the written statement by promises of leniency and by threats of being charged with murder. His grand jury testimony, he claimed, was given in exchange for his ability to go home, which the police refused to allow him to do until he testified. The State impeached Tremmel with his signed statement and grand jury testimony.

The next witness, Assistant State's Attorney Buckley, read the transcript of Tremmel's grand jury testimony into the record as substantive evidence after he testified regarding the conditions under which the testimony was taken. Specifically, Buckley testified that Tremmel came to his office on the morning of April 17, 1989. Buckley saw no police officers with Tremmel and was unaware that he had been transported to the hearing by the police. Buckley knew of no promises given or threats made in relation to Tremmel's testifying. Buckley indicated also that Tremmel had been cooperative and had freely discussed what the content of his testimony would be prior to giving his testimony before the grand jury. Before the grand jury, Tremmel answered questions posed to him by Buckley regarding the events surrounding the Unocal gas station robbery. In addition, Buckley noted that on that same day he met with Tremmel's mother, who had also been cooperative.

After Tremmel and Buckley testified on March 16, 1992, trial was continued. When trial reconvened on March 18, 1992, Johnson's jury was joined by Lester Boston's jury and Johnson's trial was conducted simultaneously with the jury trial of Lester Boston. The manner in which the trial proceeded is as follows: Both juries sat while the direct testimony of a witness was taken, Boston's jury was

removed during cross-examination by Johnson's counsel and Johnson's jury was removed during cross-examination by Boston's counsel. In this manner the juries heard the testimony of witnesses Charles Thurman, Jeffrey Thompson, Kenneth Malkowski and Detective John Irvin, who all testified in relation to the Concord Oil gas station robbery.

Charles Thurman testified that on March 22, 1989, at about 2 o'clock in the morning, he was working at the Concord gas station located at 440 West 87th Street in Chicago. A tan-colored car drove into the gas station through the only gate in the fence that surrounds the station. The car made a complete rotation so that it was facing the gate that it came through before pulling up along the gas pumps at aisle 1, which is located closest to the fence running along 87th street. As Thurman walked up to the car to service it, the front-seat passenger jumped out of the car, pointed a gun in his direction and demanded that he turn over his money to the driver of the car.

Thurman testified that he could not see the gunman because of a light that was shining behind the gunman's head and because he was concentrating on the gun. However, when he dropped the money through the window of the car, he was able to see the driver, whom he identified as Lester Boston in a lineup conducted April 15, 1989.

The next witness was Jeffrey Thompson. He, too, had been working at the Concord Oil gas station at 2 a.m. on March 22, 1989. He testified that he first realized that something was happening when someone with a gun kicked in the door of the station office where he had been doing some paperwork. The gunman held the gun to his head and ordered him to turn over his money and exit the building. He did as he was told, turning over $100 or more. He then laid down on the ground outside the station, as instructed by the gunman, and stayed there while the gunman ran back to the car amidst the exchange of gunfire. On April 15, 1989, he witnessed a lineup and identified Terrance Johnson as the gunman.

Kenneth Malkowski, a Chicago police officer moonlighting as a security guard at the Concord Oil gas station on March 22, 1989, had been in a back room of the station office when he heard a disturbance and then noticed that a man was holding a gun to Thompson's head. When the gunman led Thompson outside, Malkowski followed and exchanged several shots with the gunman as he entered a tan-colored Bonneville automobile. Malkowski testified that one of the two shots that the gunman fired at him buzzed past his ear.

After the robbers sped away, Malkowski attempted to follow in his own automobile, but soon lost sight of the vehicle. He returned to the gas station, where he met with police who arrived to investigate

the robbery. Finally, Malkowski testified that he viewed the lineup conducted on April 15, 1989, but was unable to identify anyone.

The last witness to be heard by both juries was Detective John Irvin, who had been in charge of the lineup conducted on April 15, 1989. He testified that Thurman, Thompson and Malkowski each viewed the lineup separately. The lineup consisted of five persons: Terrance Johnson, Lester Boston, another suspect whom he could not recall, Demetrius Broadwater, and Tremmel Broadwater. Thurman identified Lester Boston as the driver of the tan-colored car, Thompson identified Johnson as the gunman and Malkowski could not identify anyone.

Detective Irvin further testified that later in the morning of March 22, 1989, when it got light outside, he went to the Concord Oil gas station to search for shell casings from the gunman's weapon. He found nothing. However, he indicated that the casings of a small handgun such as a .25-caliber automatic weapon could be as small as half an inch in length and could have been ejected 5 to 10 feet upon firing.

After these witnesses, Johnson's trial was continued until March 23, 1992. On that date, when trial resumed, Johnson's trial was no longer held simultaneously with Boston's trial and only Johnson's jury was present. At this time the first witness to testify was Detective Barry Costello of the Chicago police department. He testified that about 12:30 or 1 p.m. on April 14, 1989, he drove to the Broadwater residence in search of Demetrius. There he found Tremmel, who voluntarily accompanied him to Area Two station. Detective Costello testified that he spoke with Tremmel in a station interview room at about 1:30 p.m. and again at about 7:30 p.m. Subsequently, Tremmel was made aware that Demetrius and others were also present at the station.

At some point Assistant State's Attorney Wasik was called into the investigation. Wasik spoke with Tremmel at about 1:30 a.m. in Costello's presence. Tremmel was called out to participate in a lineup, after which Wasik resumed his conversation with Tremmel. At that time Wasik committed Tremmel's oral statement to writing, Tremmel read the statement and signed it.

The last witness to testify was Assistant State's Attorney Wasik, who testified regarding the conditions under which Tremmel Broadwater's written statement was taken. Subsequently, the court allowed Wasik to publish the signed, written statement to the jury.

Closing argument was given following these witnesses. Thereafter, the jury was instructed. The jury found Johnson guilty, as charged, of attempted murder and armed robbery. He was later

sentenced to three concurrent terms of 30 years' imprisonment, to be served consecutively to the 80-year sentence imposed upon his conviction in the Unocal gas station robbery and murder.

We now turn our attention to the issues raised on appeal. The first issue, whether it was error for the trial court to have permitted the substantive use of Tremmel Broadwater's prior inconsistent and retracted statement and grand jury testimony, was vigorously argued by Johnson in the appeal he filed following his convictions for armed robbery and murder in relation to the Unocal gas station incident. In this appeal, as before, Johnson relies principally on the decision in *People v. Kidd* (1992), 147 Ill. 2d 510, 591 N.E.2d 431, to support his claim that he was denied a fair trial and due process of law by the admission of Tremmel's recanted statement and grand jury testimony as substantive evidence pursuant to section 115—10.1 of the Illinois Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1991, ch. 38, par. 115—10.1.) Johnson presents no new case law or different argument in the present appeal than was presented in the prior appeal.

■ This court has already addressed each and every argument presented by Johnson in page after page of our opinion issued in the previous appeal. In fact, the majority of our prior opinion was devoted to this point. Although *res adjudicata* or estoppel by verdict does not apply, we conclude that *stare decisis* compels us to stand on our reasoning in the prior opinion to reject this point. Thus, we hold here, as before, that the statutory requirements of section 115—10.1 having been met, Tremmel's prior inconsistent statement and grand jury testimony were properly admitted into evidence for their substantive merit.

In the second point raised by Johnson, he once again challenges the admission of Tremmel's prior inconsistent statement and grand jury testimony, claiming that the prejudicial effect of the evidence of his involvement in another similar crime outweighed its probative value.

Although the improper admission of other crimes evidence was advanced and rejected in the prior appeal, the issue is framed a bit differently in this appeal. Here Johnson argues that this case presents a unique situation because the collateral crime evidence was not presented by an eyewitness, but via several witnesses who testified to Tremmel Broadwater's retracted out-of-court statements. Thus, he contends, the evidence connecting him to the Unocal gas station robbery, although relevant and probative, was overly prejudicial because of the manner in which it had to be introduced. Not surprisingly, Johnson presents no case law in support of his position.

It is true that, as a general proposition, other crimes evidence is

inadmissible because it may overpersuade the jury to convict the defendant because he is a "bad person" or because he has a propensity to commit crime, rather than because the evidence presented at trial is sufficient to support conviction. However, the rule has as many exceptions as there are leaks to the newspaper in criminal cases involving Polish congressmen. In other words, the exceptions swallow the rule.

In practice, evidence of collateral crimes may be admitted for *any* purpose other than to show propensity to commit crime. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821.) Evidence of collateral offenses will be admitted as long as it has some tendency to show identity, intent, design, plan, motive, absence of mistake, or *modus operandi*. The only caveat is that the prejudicial effect should not substantially outweigh the probative value. *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.

■ At trial, Johnson's identity as the gunman in the Concord Oil gas station robbery was the only issue. There was no doubt that the crime took place. What the State had to establish was Johnson's participation in the crime. Johnson's defense was that he was misidentified, a defense that his counsel advanced by showing that the physical description of the gunman given to police by witnesses immediately after the robbery did not match Johnson. Only one witness, Jeffrey Thompson, identified Johnson as the gunman in the Concord Oil gas station robbery. Neither Charles Thurman nor Kenneth Malkowski could corroborate Johnson's identity as the gunman. Thus, Tremmel Broadwater's prior statement and grand jury testimony, naming Johnson as the gunman in the Unocal gas station robbery, which occurred less than an hour later that same morning and less than two miles away from the Concord Oil station, involving the same participants driving the same color car, was certainly probative in the establishment of Johnson's identity. It showed that Johnson had the opportunity to commit the Concord Oil gas station robbery, as well as a common plan or design in the manner of its commission. Thus, we believe that the trial court did not abuse its discretion in deciding that the probative value of this evidence outweighed any prejudicial effect.

It is true that Tremmel Broadwater recanted his prior testimony and statement in which he identified Johnson as the gunman in the Unocal gas station robbery, making it necessary to present that identification evidence through other witnesses. However, we do not believe that the admissibility of the evidence should hinge on that fact. The question should remain whether the evidence was probative and whether the probative value was outweighed by the prejudicial effect.

In this instance, the prejudicial effect may even have been lessened by the fact that Tremmel's identification evidence was recanted. Tremmel testified at trial that he knew nothing about the Unocal gas station robbery, that he signed a statement that had been prepared for him without having any personal knowledge of its contents, and testified as to the contents of the statement before the grand jury so that he would be released by the police and not be charged with a crime. Under these circumstances, the jury was free to reject the earlier statement and grand jury testimony, perhaps diminishing its prejudicial effect.

In any event, the balancing of the two factors was the duty of the trial court and we cannot say that its decision was fanciful, arbitrary or unreasonable. (See *People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515.) Therefore, we find no abuse of discretion in admitting this evidence.

Similar to his second point, Johnson contends in his third point that he was denied a fair trial by the admission of evidence which linked him to other offenses or bad acts which had no probative value. In this issue Johnson argues that, even if evidence concerning the Unocal gas station robbery was properly admitted, Tremmel's statement and grand jury testimony went far beyond establishing Johnson's participation in that crime. The prior statements included unnecessary details, such as: (1) that Johnson had stolen the vehicle used during the robberies, (2) that Johnson and the others had attempted to rob a drug house called "Unk's," but had not done so only because no one was there, and (3) that Johnson shot the Unocal gas station attendant in the back and then took money from the attendant's pockets as he lay on the ground. Johnson cites *People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59, for the proposition that it is error for a trial court to permit the introduction of evidence of other crimes which is not relevant to issues for which the evidence is admitted. Thus, he concludes that he was highly prejudiced by the admission of this inflammatory evidence which had no probative value in establishing any fact of consequence. Based upon this claim, Johnson requests that his convictions be reversed and a new trial be ordered in which "evidence of other crimes is more narrowly circumscribed."

■ Although the court in *Bartall* did "advise against" detailed evidence of other crimes being admitted, it found that no prejudicial error occurred by the admission of the irrelevant evidence. We believe that the same can be said here. The State did not dwell on the evidence that the car used in the robberies was stolen or that there was a plan to rob Unk's. This was merely a part of the continuing narrative.

Furthermore, we would agree with the State that any error in the admission of irrelevant other crimes evidence has been waived because defendant failed to raise this specific objection to the admission of the recanted statement and testimony, either at trial or in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) It is true that Johnson moved to suppress Tremmel's entire statement and testimony. However, as the State argues, a motion to suppress would not have alerted the court as to this specific objection. Therefore, the trial court had no opportunity to correct the defect of which defendant now complains. In addition, as we noted in our opinion in Johnson's prior appeal, the trial court's proper determination that Tremmel's prior statement and testimony were admissible as substantive evidence pursuant to statute admitted their entire content unless defendant requested portions to be redacted. By failing to have made such a request, Johnson has waived this issue for review.

With regard to the evidence that the Unocal gas station attendant was shot, however, we find that it was properly admitted. This evidence was relevant to establish the fact that Johnson carried a gun and also to show intent, which was at issue since, in the Concord Oil robbery, shots were fired and the State was prosecuting Johnson for attempted murder.

In his fourth claim of error Johnson contends that he was denied a fair trial due to the misleading instruction tendered to the jury on the permissible use of other crimes evidence. The instruction to which Johnson charges error is People's Instruction No. 10, taken from Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981), which stated as follows:

"Evidence has been received that defendant has been involved in offenses other than those charged in the indictment.

This evidence has been received on the issue of the defendant's identification, intent, design, knowledge, time and place proximity, and the use of the same or similar weapon in each offense and may be considered by you only for that limited purpose.

It is for you to determine whether the defendant was involved in those offenses and, if so what weight should be given to this evidence on the issues of identification, intent, design, knowledge, time and place proximity, and the use of the same or similar weapon in each offense."

Johnson argues that this instruction was improper because, by telling the jury that it could consider the evidence of other crimes on the issue of identification, the court destroyed any limiting value the instruction might have had. Johnson contends that this instruction,

which states that the jury may consider evidence of other crimes on the issue of identity, in actuality implies and suggests that Johnson's guilt may be determined based upon a showing that he has a propensity to commit crime. Johnson further argues that the other crimes evidence "did nothing to aid the jury in assessing the reliability of the witness's identification." Thus, Johnson concludes that reversal of his convictions is required because the jury instruction was not sufficiently accurate in informing the jury of the narrow use for which it could consider the evidence of other crimes and because it permitted the jury to use the evidence for precisely the wrong reason, *i.e.*, to determine guilt based upon propensity to commit crime.

The identical argument was advanced, and rejected, in Johnson's prior appeal that was before this court. We find no greater merit to the argument now than we did before.

■ Because we disagree with Johnson's initial premise, that the evidence of Johnson's participation in the Unocal gas station robbery did not aid the jury in assessing identification, we disagree with his conclusion that the instruction was improper. We have already determined earlier in this decision that evidence that Johnson was identified as the front-seat passenger in a tan-colored car, that he carried a small caliber automatic handgun which he used in the course of a robbery at another gas station located less than two miles away and less than one hour later, certainly assisted the jury in deciding whether Jeffrey Thompson correctly identified Johnson as the gunman in the Concord Oil gas station robbery. It was the similarity between the two crimes, the apparent common purpose, plan and method of execution, as well as the close proximity of time and place, which made the Unocal gas station robbery relevant to the issue of Johnson's identification and allowed the jury to consider that evidence when deciding whether Johnson was the perpetrator of the Concord Oil gas station robbery. Thus, here, as in the prior appeal, the instruction properly stated the law as it applied to this case and we find no error in the giving of instruction No. 10 to the jury.

In Johnson's final issue he alleges that he was denied a fair trial due to prosecutorial misconduct. Johnson makes reference to five separate instances, which he claims evidenced prosecutorial misconduct: (1) rephrasing a question to Jeffrey Thompson, asking him why he could identify Johnson as the gunman, after an objection had been sustained to a similar question, (2) an anecdotal story told by the prosecutor, which was used to suggest that traumatic conditions heighten memory, (3) the prosecutor's interjection of

objections during defense counsel's closing argument, claiming that defense counsel was misstating the evidence, (4) the prosecutor's suggestion, during rebuttal argument, that to accept Tremmel's trial testimony as true, the jury would have to conclude that the police were lying, and (5) the prosecutor's exploitation of his position and office by arguing that, given the same circumstances, he would have behaved as Tremmel had done and voluntarily remained at the police station for three days.

As we noted in Johnson's prior appeal in the Unocal gas station robbery case, the claim of prosecutorial misconduct has become an all-too-frequent claim of last resort. Although there are certainly instances of prosecutorial misconduct which require reversal, the behavior must be particularly egregious and constitute a material factor in the conviction. (*People v. Linscott* (1991), 142 Ill. 2d 22, 566 N.E.2d 1355.) Here, as in the prior appeal, we find no reversible error in the prosecutor's conduct.

■ We reiterate our cautionary remarks that prosecutors must choose their words carefully so that they do not improperly use the authority of their office to persuade the jury to convict, thereby undermining the judicial process. (*People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217.) However, we also reaffirm our belief that to overly restrict a prosecutor's remarks would put a stranglehold on the art of eloquent argument. Having reviewed the alleged misconduct in light of the entire trial in this case, we do not believe that the cited comments were error or, if error, that they constituted a material factor in Johnson's convictions.

For all the reasons stated above, we affirm the judgment entered in this case and uphold Johnson's convictions for attempted murder and armed robbery.

Affirmed.

GORDON and COUSINS, JJ., concur.