**Brandon ROBINSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 43A04–9902–CR–48.**

Court of Appeals of Indiana.

Feb. 28, 2000.

Transfer Denied May 4, 2000.

Mark Small, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

FRIEDLANDER, Judge

Brandon Robinson appeals his convictions for three counts of Operating While Intoxicated Causing Death,[1] as class C felonies, and two counts of Operating While Intoxicated Causing Serious Bodily Injury,[2] as class D felonies.[3] As restated, Robinson presents four issues for review:

1. Did the trial court abuse its discretion by allowing Robinson's counsel to withdraw, at Robinson's request, four days before trial, and by denying requests for continuances made before and after Robinson's first counsel withdrew where alleged inadequacies in first counsel's preparation prior to trial were deficient so as to constitute ineffective assistance of counsel thereby tainting Robinson's trial?

2. Did the trial court abuse its discretion by refusing to allow amendment to the witness list and a continuance in order for Robinson to secure an expert witness?

1. Ind.Code Ann. § 9–30–5–5 (West Supp. 1999).

2. IC § 9–30–5–4.

3. Robinson was found not guilty of three counts of reckless homicide.

3. Did the trial court abuse its discretion by refusing to admit evidence of the results of a urine test for marijuana taken on the night of the collision?

4. Did the trial court abuse its discretion by admitting, over Robinson's objections, evidence of marijuana and pipes?

We affirm.

The facts favorable to the judgment are that on June 12, 1998, eighteen-year-old Robinson was driving his dual-wheeled, extended-cab, pickup truck in Kosciusko County. At around 6:00 p.m., Robinson used false identification to purchase beer for friends. He kept some of the beer for himself.

While driving his truck, Robinson "nudged" a car driven by Kathy Guetschow. *Record* at 430–431, 480. Donald Ditton, Sebastian Jarski, and Phillip Gagnon were in Guetschow's car. Robinson and the others were friends. They all decided to park Guetschow's car and to ride around with Robinson in his truck. Guetschow, Ditton, and Gagnon noticed that Robinson was drinking beer from a large bottle. Ditton observed everyone but Robinson smoke marijuana while they were in the truck. Gagnon, who was in the front passenger seat, saw Robinson smoke marijuana. Guetschow was not sure whether Robinson smoked marijuana. The group stopped at another liquor store and Robinson purchased a twelve-pack of beer. Everyone but Guetschow drank some of the beer.

While the friends were in the truck, Robinson either "nudged," *Record* at 432, or drove very closely to another car. The driver of the car yelled at Robinson. Robinson pursued the car. When the car pulled to the side of the road, Robinson "acted like he was going to go hit the car but he swerved away from it." *Record* at 432.

At some point during the evening, Robinson took Jarski home. The rest of the group went to look at a house in Palestine, Indiana owned by Robinson. Robinson spoke to someone on his cellular telephone while the group was at the house. Robinson seemed angry after the telephone conversation.

The group traveled on State Road 25 to return to the Warsaw area. As Robinson was driving on State Road 25, the passengers estimated his speed at between sixty and seventy miles per hour. Robinson encountered a slower sport utility vehicle. He accelerated and passed the slower truck. The speed limit was fifty miles per hour at that point. Guetschow heard Robinson say, "fuck the Bronco." *Record* at 442. Ditton recalled hearing a similar statement. An intersection with a four-way stop was about one-fourth to one-eighth of one mile from the point where Robinson passed the truck. As they approached the intersection, Guetschow heard Robinson say, "fuck the stop sign." *Record* at 445. Ditton heard a similar statement. Gagnon heard Robinson say, "they'll have to wait." *Record* at 630. Robinson's truck struck a car in the intersection. The driver and two passengers in the car were killed. The other two passengers in the car sustained serious injuries.

When the police arrived at the scene, Robinson told Officer Joe Stanley that he had been drinking alcohol. Robinson said that he had three beers. Robinson also told Officer Stanley that he failed to stop at the stop sign.

Officer Stanley discovered a brown bag under the rear seat in the pickup truck. Inside were three pipes that smelled like burnt marijuana. While he was in the cab of the pickup, Officer Stanley noticed that the upper interior, the seats, and the carpet were saturated with beer. A strong odor of alcohol permeated the interior of the pickup. Officer Stanley discovered a small sack inside the glove compartment that contained a green material that was later identified by a police chemist as marijuana.

Robinson was transported to a local hospital for testing. A blood test taken approximately two hours after the collision revealed that Robinson's blood alcohol content was .099%. A urine test for marijuana was also performed.

At Robinson's trial, Dr. David Ackley, an Assistant Director for the Indiana State Department of Toxicology, testified that everyone is impaired to some extent when their blood alcohol level reaches .08%. Dr. Ackley noted that the impairment typically affects auditory and visual acuity, tactile sensation, behavior, and the performance of "multiple task" activities including driving. *Record* at 406.

Dr. Ackley also testified that a urine screen for marijuana use is less exact than a blood test because a urine test is not effective until the cannabinoids collect as waste in a sufficient amount to "trip the screening process". *Record* at 411. Dr. Ackley believed that if a person used marijuana approximately two hours before a urine screen, the test would not necessarily indicate the presence of marijuana. Depending upon the circumstances, a urine screen will begin to detect the use of marijuana "about three to eight hours after" the use. *Record* at 420.

A police accident reconstructionist, Sgt. Kip Shuter, noted that there was no evidence that Robinson attempted to brake before entering the intersection. Sgt. Shuter estimated that Robinson was driving at between sixty-three and sixty-eight miles per hour when his truck began to skid within the intersection. He estimated that Robinson's truck was traveling at between fifty-eight and sixty-four miles per hour when it struck the car.

Robinson's defense theories were that he was not impaired and that his actions did not rise to the level of criminal recklessness. He characterized his actions as merely negligent. The jury returned verdicts of guilty as noted above.

**4.** We note that Robinson was not represented by a public defender. He chose both first

**1.**

▮ Robinson contends that the trial court abused its discretion by allowing Robinson's first attorney[4] to withdraw from the representation of Robinson four days before trial, and by not granting Robinson's requests for continuances made before and after his first counsel withdrew. He contends that his first counsel's preparation prior to trial was deficient so as to constitute ineffective assistance of counsel. According to Robinson, because his trial counsel did not have time to take depositions, update discovery to include experts, or engage in a lengthy investigation of the matter with only one weekend to prepare, Robinson's trial was tainted by first counsel's lack of preparation.

On November 10, 1998, first counsel filed a motion to withdraw from the case based upon Robinson's request. A hearing was held on November 12, 1998. The trial court questioned Robinson about his intentions regarding hiring new counsel. The trial court informed Robinson that the trial was scheduled for November 16, 1998 and would not be continued. Robinson indicated to the trial court, *inter alia:* 1) that he had new counsel, 2) that he had the funds to pay counsel, 3) that he was not requesting court-appointed counsel, 4) that he no longer desired the representation of first counsel, and 5) that he expected new counsel to enter an appearance. The trial court queried: "Mr. Robinson, do you understand the dangers of changing counsel on the eve of trial that could put yourself and Mr. Gray [intended counsel] at an extreme disadvantage if we proceed to trial next week?" *Record* at 130. Robinson responded: "Yes sir." *Record* at 130. After that colloquy, the trial court twice reiterated its intention to try the case as scheduled on November 16, 1998. Both times Robinson indicated that he understood. The trial court further explained its desire to proceed as planned because of

counsel and counsel who represented him at trial.

the inconvenience to the more than thirty-five witnesses scheduled to appear.

Robinson steadfastly maintained his desire to be represented by new counsel until the trial court formally denied the motion for a continuance. Robinson then indicated that he might desire to keep his first counsel. The trial court allowed counsel to withdraw. The trial court informed Robinson that he could make arrangements to rehire first counsel or proceed in another manner.

On the morning of trial, Robinson was represented by replacement counsel. The attorney was not Robinson's first counsel or the attorney Robinson told the trial court he was hiring. Replacement counsel requested a continuance. Counsel based his request on the brief preparation time he had, and on an allegation that first counsel had not adequately prepared for trial. The trial court referred to the hearing four days previously and explained that Robinson knew he would not be granted a continuance when he chose to hire new counsel. The trial court denied the motion for a continuance made on the morning the trial was set to commence. In so doing, the trial court noted:

> [O]ne important factor … in the Court's decision Thursday of last week, uh, to allow Mr. Rigdon to withdraw from this case was [the] representation by the Defendant that he had new counsel. Had hired attorney Frank Gray from Fort Wayne and Frank Gray would be appearing this morning for trial. That is a factor that the Court weighed heavily in making that decision and it has not been addressed, but I want the record to reflect that Mr. uh, Robinson did indicate, on the record, he did have a new attorney ready to stand in, take the case, and had the funds to pay for that attorney. Uh, the Court would deny the defendant's request for continuance of trial.

*Record* at 149–50.

■ The decision whether to grant a defendant's request to change counsel made immediately prior to trial is a matter within the sound discretion of the trial court. *Gilliam v. State*, 650 N.E.2d 45 (Ind.Ct.App.1995) (defendant asked to change counsel on the morning of trial and did not identify other counsel willing to represent him and did not state that he could pay other counsel; thus, the trial court did not abuse its discretion by denying the request). The court's determination will be reversed only when it constitutes a clear abuse of discretion that resulted in prejudice to the defendant's right to a fair trial. *Id.*

■ Motions for continuance, not based upon statutory grounds, are committed to the sound discretion of the trial court. *Ridley v. State*, 690 N.E.2d 177 (Ind.1997). Continuances to allow time for additional preparation are not favored. *Id.* Such motions require a specific showing as to how the additional time would have aided counsel. *Id.* (the trial court was in the best position to assess defense counsel's request for a continuance based upon the assertions that the State delayed discovery as a trial tactic, and that there was insufficient time to investigate, which led to a failure to object to trial evidence and a failure to cross-examine witnesses).

In *Timm v. State*, 644 N.E.2d 1235 (Ind. 1994), our supreme court addressed the matter of a trial court's discretion to deny requested continuances while allowing a criminal defendant's counsel to withdraw when the motion is made in close proximity to the trial date. In *Timm*, the defendant asked to replace his counsel on the Friday before a Monday trial. After the defendant indicated that he understood the risk of going forward with new counsel, the trial court granted counsel's request to withdraw. On the morning trial was scheduled to commence, new counsel requested a continuance in order to prepare for trial. The trial court reminded the defendant of the discussion and denied the request for a continuance. The court in *Timm* distinguished a case where the de-

fendant was left unrepresented and the trial court denied a request for a continuance. *Id.* Noting that trial courts enjoy broad discretion when ruling on motions for continuances and that courts do not favor continuances for additional preparation, the court in *Timm* stated:

> Like the defendant in *Risner* [*v. State*, 604 N.E.2d 13 (Ind.Ct.App.1992) ], Timm was fully informed by the judge of the possible adverse consequences of changing representation so close to trial. He was not abandoned by counsel, as was the defendant in *Rice* [*v. State*, 220 Ind. 523, 44 N.E.2d 829 (1942) ], and he was in no danger of having to represent himself. We find *Risner* persuasive and hold that the judge acted well within his discretion in allowing Timm, with advice from his attorney, to make his own choice in the matter. As the court stated in *Risner*, parties are not entitled to manipulate the judicial process by using a motion to withdraw as counsel to secure a continuance at the eleventh hour. *Id.* at 15. We uphold the trial court's denial of the continuance.

*Id.* at 1237.

Robinson was fully informed of the consequences of changing counsel so close to his trial date. He was informed that the trial would proceed as scheduled. Robinson told the trial court that he had new counsel. The trial court explicitly relied upon Robinson's assertion. Under the circumstances, the trial court did not abuse its discretion in allowing Robinson's first counsel to withdraw.

■ Robinson contends that once the trial court allowed his first counsel to withdraw, the court was obliged to grant his request for a continuance to prepare for trial. Robinson relies on several perceived inadequacies in first counsel's preparation as evidence that first counsel was ineffective and that his trial was affected. Robinson contends that first counsel: 1) did not retain experts, 2) did not conduct depositions, 3) filed a shorter witness and exhibit list than did the State and that it contained errors, and 4) sought a continuance in September 1998, requesting more time to prepare.

■ Generally, we are called upon to assess counsel's performance at trial or on appeal. Robinson asks us to assess the effective assistance of counsel whose allegedly inadequate preparation directly affected the trial. To show ineffective assistance, a defendant must demonstrate both that counsel's performance was deficient and that there was resulting prejudice. *Rouster v. State*, 705 N.E.2d 999 (Ind. 1999). A defendant must demonstrate that the identified acts or wrongs of counsel were outside of the broad range of professionally competent assistance, and not attributable to "[i]solated poor strategy, bad tactics, a mistake, carelessness or inexperience." *Brown v. State*, 698 N.E.2d 1132, 1139 (Ind.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1367, 143 L.Ed.2d 527 (1999). Prejudice may be shown when there is a reasonable probability that absent counsel's errors, the result of the proceeding would have been different. *Rouster v. State*, 705 N.E.2d 999. Even if a defendant successfully demonstrates prejudice, "he must also show his conviction was fundamentally unfair or unreliable." *Id.* at 1003.

On the morning trial was set to commence, Robinson's trial counsel requested a continuance, in part, based upon his opinion that Robinson's first counsel had not adequately prepared for trial. Trial counsel noted that he had only first counsel's materials, the materials provided by the deputy prosecutor, and one weekend, during which he spent 37.5 hours, to prepare for Robinson's trial. Trial counsel urged that he was at a disadvantage on two fronts. He was hampered by first counsel's deficient preparation with regard to his own preparation for the trial and with regard to presentation of evidence at trial.

The record discloses that first counsel did prepare for trial. On September 28,

1998, Robinson's first counsel moved for a continuance of the November trial. Counsel based his request, only in part, on the need for additional preparation. Counsel also noted a conflict with a family vacation and a conflict with another client's trial. The trial court denied the continuance, and first counsel, thereby forewarned that continuances would not be forthcoming, continued to prepare for Robinson's trial. First counsel filed a witness and exhibit list in September. He filed a motion for a change of judge together with a supporting brief in October, and participated in a hearing on the matter. First counsel also participated in at least two pretrial hearings. He filed proposed jury instructions in October. In a pretrial conference, first counsel noted that he spoke to witnesses, but that he did not take depositions because he did not need them. He explained the witness list, including the mistake in one witness's name. He obtained a stipulation as to some evidence .[5] Further, the witness list did contain the names of expert witnesses. It is clear that although first counsel requested a continuance to prepare, he continued to prepare for trial after the September 1998 continuance request was denied. Our review of the filings, pretrial hearings, and first counsel's time sheet reflects work, including motions, briefs, and hearings by first counsel until at least October 1998. Robinson asked first counsel to withdraw on November 10, 1998.

 Robinson's task in showing that the perceived inadequacies required a continuance is a formidable one. Trial counsel requested a continuance based upon the manner in which he would prefer to prepare for trial. Because first counsel did not try the case, it is not clear what his strategy would have been. To the extent that Robinson invites this court to speculate that alleged inadequate preparation by first counsel affected his trial, he is not

entitled to review. Courts on review neither engage in speculation nor render advisory opinions. *Cuto v. State*, 709 N.E.2d 356 (Ind.Ct.App.1999).

Implicit in an attorney's decision to commence representation of a party very near a trial date is the balancing of the party's desire to be represented by counsel of choice and the paucity of time the new counsel will have to prepare in the manner he or she would prefer. When Robinson's trial counsel requested a continuance on the morning trial was set to commence, he acknowledged that he was aware that the trial court had informed Robinson that no continuances would be granted. Trial counsel was able to assure the trial court that he had spent hours preparing and had access to all of the materials possessed by first counsel and the deputy prosecutor.

 Robinson has not demonstrated that the alleged inadequacies constituted ineffective assistance of counsel or that the trial court abused its discretion by denying his requests for continuances based upon the alleged inadequacies in preparation. It is just as likely as not that first counsel was adequately prepared to present Robinson's defense in his own manner. The record does not reveal that trial counsel was hampered by first counsel's preparation. The course of the proceedings demonstrate that trial counsel fully and vigorously presented Robinson's defense, even if he would have prepared differently than did first counsel. Further, given the overwhelming evidence supporting the convictions, Robinson has not demonstrated fundamental unfairness or unreliability as required to succeed on a claim of ineffective assistance of counsel.

Our review does not end with the determination under the traditional ineffective assistance of counsel analysis. We recognize that Robinson's claim is similar to that of the petitioner in *Harrison v. State*, 707

---

**5.** The record discloses that the stipulation concerned a "tox (sic) screen of the Defendant". *Record* at 118. The stipulation was not mentioned in the trial and was never clearly identified.

N.E.2d 767 (Ind.1999) (an appeal of the denial of post-conviction relief). Like the petitioner in *Harrison*, Robinson contends that circumstances beyond his trial counsel's control directly affected trial counsel's ability to effectively represent him at trial, and rendered his trial unfair.

Relying upon *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the petitioner in *Harrison* urged that "the circumstances under which trial counsel labored were so unfair and arbitrary that [he] was denied his right to counsel." *Id.* at 774. The *Harrison* court discussed the three exceptions to the traditional ineffective assistance of counsel analysis as found in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Harrison* court stated:

> In particular, *Cronic* delineates three circumstances that avoid the *Strickland* requirement that a defendant establish both deficient performance and actual prejudice: (1) the complete denial of counsel; (2) a complete failure by counsel to subject the State's case to meaningful adversarial testing; and (3) the circumstances of the trial are such that, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Minnick [v. State]*, 698 N.E.2d [745] at 751–52 (quoting *Cronic*, 466 U.S. at 659–60, 104 S.Ct. 2039, 80 L.Ed.2d 657). Harrison contends that he falls in the third category based on his view that "[t]he unique and untenable circumstances under which [his] trial lawyers labored were so restrictive as to render them helpless and thus constructively denied [him] his right to counsel."

*Harrison v. State*, 707 N.E.2d at 774. Ultimately, the *Harrison* court determined that the petitioner's claims of 1) lost evidence, 2) disparity of resources, 3) exclusion of evidence, and 4) "trial counsel's concurrent representation of another capital defendant", *id.*, were not individually or collectively sufficient to warrant a presumption of prejudice. *Id.* at 777.

Against the factual backdrop of first counsel's efforts and the trial court's rulings, we can determine that the circumstances do not meet the presumptive prejudice outlined in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657. The circumstances do not warrant a determination that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659–60, 104 S.Ct. 2039.

3.

Robinson contends that the trial court abused its discretion by not allowing him to present testimony from an expert witness.

During its case-in-chief, the State presented expert witness testimony from Sgt. Kip Shuter regarding the speeds of Robinson's truck and the car in the collision based upon calculations from measurements at the scene. At the close of the State's case, Robinson's trial counsel moved for a directed verdict as to some of the charges, requested the addition of two rebuttal witnesses to Robinson's witness list, and requested a continuance to allow a university professor who examined Sgt. Shuter's documents to make himself available for examination as an expert witness. The trial court denied the motion for the directed verdict, granted the motion to amend the witness list to include two rebuttal witnesses not previously disclosed, and denied the motion to continue the trial to allow the testimony of the university professor.

Robinson alleges that the trial court abused its discretion for refusing to allow him to amend his witness list to include the professor. Robinson fails to note that he requested a continuance to secure the

presence of the professor as an expert witness. Under the circumstances, the request for a continuance appears critical to the trial court's decision. The trial court allowed Robinson to add witnesses who were available. There is no reason to believe that the expert witness would not have been allowed if his presence had not required a continuance. As discussed above, the decision whether to grant a continuance, for a reason not based upon statute, is left to the discretion of the trial court. *See Ridley v. State,* 690 N.E.2d 177. The court did not abuse its discretion by denying a continuance to secure the presence of an expert witness, especially where the request was made on the fourth day of trial after the State had rested.

 In any event, the decision whether to allow additions to a party's witness list lies within the discretion of the trial court. *See Johnson v. State,* 580 N.E.2d 670 (Ind.1991). A defendant who seeks to call a witness not previously disclosed on a witness list must make an offer of proof as to the nature of the evidence to allow the trial court to assess the propriety of the motion. *See Lockhart v. State,* 671 N.E.2d 893 (Ind.Ct.App.1996) (reciting factors that a trial court may consider when deciding whether to allow the amendment). One factor a court may consider is the significance of the testimony. *Id.* Robinson's counsel indicated that the professor had an opinion regarding Sgt. Shuter's documents, thus implying that the professor's opinion somehow differed from that reported by Sgt. Shuter. The trial court reasonably, however, could have surmised that the expert testimony would not have been greatly helpful to Robinson. Robinson's passengers, and Robinson himself, estimated Robinson's speed in the same range as the estimations provided by Sgt. Shuter. In further support of Sgt. Shuter's observations is Robinson's testimony that he did not see the stop sign in time to brake before the intersection. Also, trial counsel exhaustively cross-examined Sgt. Shuter regarding his calculations and re-

port. The trial court did not abuse its discretion by denying Robinson's request to continue the trial and amend the witness list to add an expert witness with an opinion as to the documents generated by Sgt. Shuter.

4.

Robinson contends that the trial court abused its discretion by refusing to admit into evidence the results of a urine screen for marijuana taken on the night of the collision.

> To lay a foundation for the admission of evidence at trial, the proponent of the evidence must show that the evidence has been authenticated, or put simply, show by sufficient evidence that "the matter in question is what its proponent claims." Ind. Evidence Rule 901(a). A piece of evidence may be authenticated by any method described in the Indiana Rules of Evidence, or by any method provided by an Indiana statute or rule. *See* Evid. R. 901(a)(10). Where the document at issue is a domestic public record, and certified in accordance with Trial Rule 44(A)(1), the document is self-authenticating and no extrinsic evidence is necessary for its admission. Ind. Evidence Rule 902(*l* ).

*Bartlett v. State,* 711 N.E.2d 497, 502 (Ind. 1999).

During Robinson's direct testimony, counsel attempted to admit a document that contained a negative finding as to Robinson's urine screen for marijuana. During the State's case-in-chief, evidence of Robinson's blood alcohol screen was admitted. Also, a State's witness testified that Robinson was tested for drugs. No test result for drugs, other than alcohol, was admitted during the State's case-in-chief. As noted in the facts, the State did elicit testimony from Dr. Ackley that refuted the significance of a negative urine drug test for marijuana taken within a few hours after the alleged ingestion of the drug.

Robinson testified that he learned the results of the alcohol test on the night of the collision, but he did not learn the results of the drug test until later. When Robinson testified that he learned the results of the drug screen, the State objected on foundational grounds and then hearsay grounds. Robinson then testified that he recognized the document that contained the urine drug screen results. The State again objected. The trial court allowed Robinson to identify the document as a "urine drug screen", *Record* at 706, that he received from his former lawyer, that had his name, that was dated on the date of the collision, and that was generated by the Kosciusko County Community Hospital Lab. Robinson stated that he gave a urine sample and that the document pertained to that urine sample. The State objected on foundational grounds. The trial court sustained the objection.

Robinson did not contend at trial that the document was a certified record. No evidence was presented as to certification. Thus, the document is not self-authenticating. *See Bartlett v. State*, 711 N.E.2d 497.

Robinson argues on appeal, but did not so state at trial, that the document was a business record. Robinson acknowledges that he did not attempt to admit the document through an official with knowledge of the business records. *Cf. Shepherd v. State*, 690 N.E.2d 318, 329 (Ind.Ct.App. 1997) (to admit a business record under the hearsay exception, the proponent may authenticate the exhibit through a "witness who has a functional understanding of the record keeping process of the business with respect to the specific entry, transaction or declaration contained in the document"), *trans. denied.* He attempts to fit his circumstances to the business records exception by reference to the testimony of a police supervisor that a drug test was performed on Robinson on the evening of the collision. Robinson did not seek to introduce the document under a business records exception to the hearsay rule. As such, he cannot rely upon that basis on

appeal. *See Jones v. State*, 536 N.E.2d 267 (Ind.1989) (appellant cannot rely on grounds different from those offered at trial).

 Ind. Evidence Rule 901(a) provides that authentication of a document for admissibility purposes is sufficient if the matter in question is what its proponent claims. *Herrera v. State*, 710 N.E.2d 931 (Ind.Ct.App.1999). "The admissibility of documents as exhibits is a matter within the trial court's discretion and will be reversed only upon a showing of an abuse of that discretion." *Id.* at 938. A document may be authenticated by the testimony of a witness with knowledge that the document is what it is claimed to be. *Id.* Here, the trial court was not satisfied that Robinson could properly authenticate the document.

On appeal, the State acknowledges that urinanalysis has been ruled admissible in Indiana. *Carter v. State*, 706 N.E.2d 552 (Ind.1999). In *Carter,* the supreme court determined that the foundational requirements for admission of urinanalysis in a probation hearing were met by the testimony of the technician who performed the test. The *Carter* court specifically noted the lesser evidentiary standards attendant to probation hearings. *Id.* The decision in *Carter* is inapplicable to Robinson's circumstances. The admission was not sought in a probation action. Robinson could not testify regarding administration of the test or the reliability of the equipment, as did the technician in *Carter.* We cannot say that the trial court abused its discretion by refusing to admit the document on foundational grounds.

 Robinson contends that he was further prejudiced by the State's reference, during closing arguments, to his inability to secure admission of the negative urine screen results. We agree that the reference was unfortunate because it intimated that Robinson should have presented evidence of a negative test if it existed. Any possible prejudice should have been

ameliorated when the jury was instructed twice that arguments of counsel do not constitute evidence. Also, Robinson did not object to the comments by the deputy prosecutor. Robinson did not preserve any possible error for review. The failure to object to alleged improper prosecutorial remarks results in waiver. *Heavrin v. State*, 675 N.E.2d 1075 (Ind.1996).

### 5.

 Robinson contends that the trial court abused its discretion by admitting evidence retrieved from his truck. Essentially, Robinson argues that the State failed to demonstrate a proper chain of custody for admission of the bag of marijuana found in the glove compartment and the bag containing marijuana pipes found under the rear seat.

> The chain-of-custody doctrine requires an adequate foundation to be laid showing the continuous whereabouts of physical evidence before it may be admitted into evidence. When dealing with fungible items, ... the State has an enhanced burden of demonstrating a sufficient chain-of-custody. The State, however, need only provide evidence that strongly suggests the exact whereabouts of the evidence at all times. The State need not provide evidence that excludes all possibilities of tampering but instead must provide reasonable assurances that the evidence passed through various hands in an undisturbed condition.

*Shipley v. State*, 620 N.E.2d 710, 715 (Ind. Ct.App.1993) (citations omitted).

Without objection by Robinson, Officer Stanley testified that he discovered the bag with the marijuana and the bag with the marijuana pipes in Robinson's truck on the evening of the collision. The two separately marked exhibits were admitted through the testimony of Sgt. Shuter. Sgt. Shuter, the accident reconstructionist, testified that, as part of his supervisory duties, he also was responsible for control of the evidence lockers. Sgt. Shuter testified that he obtained the items from Officer Stanley. He testified that, to the best of his knowledge, the items remained in his evidence locker until they were brought to court, except for taking them to the Indiana State Police Laboratory for testing. The items were admitted over Robinson's objections.

Robinson's chain-of-custody argument is directed to the admission of the evidence through the evidence officer and not the officer who discovered the evidence. Robinson does not provide authority for the proposition that evidence must be admitted through the officer who discovered it, nor does our research reveal such authority. The testimony regarding the chain of custody strongly suggests that the items were always protected and in the possession of police authorities. Robinson has not demonstrated flaws that would require the trial court to deny their admission into evidence.[6]

Judgment affirmed.

GARRARD, Sr.J., and DARDEN, J., concur.

---

**6.** Intertwined in Robinson's argument, is the contention that admission of the exhibits caused him undue prejudice. In his direct testimony, Robinson explained that he was not arrested for possession of marijuana on the night of the collision. He stated that he did not know about the bag of marijuana found in the glove compartment of his truck. He admitted that the marijuana pipes belonged to him. He admitted that he had smoked marijuana in the past, but he stated that he did not smoke marijuana on the night of the collision. Robinson also testified that Gagnon lied when he stated that he saw Robinson smoke marijuana on the night of the collision. Robinson offered explanations as to the presence of the items, and we do not perceive any undue prejudice from their admission.