## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 10 2015, 9:30 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jeremy K. Nix<br>MATHENY, HAHN, DENMAN & NIX, LLP<br>Huntington, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Cynthia L. Ploughe<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Scott D. Hartman,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | November 10, 2015<br><br>Court of Appeals Case No. 90A05-1503-CR-99<br><br>Appeal from the Wells Circuit Court<br><br>The Honorable Kenton W. Kiracofe, Judge<br><br>Trial Court Cause No. 90C01-1405-FD-35 |

**Mathias, Judge.**

[1] Following a jury trial, Scott Hartman ("Hartman") was convicted in the Wells Circuit Court of Class D felony theft and Class A misdemeanor driving while

suspended and was found to be a habitual offender. Hartman was ordered to serve an aggregate sentence of eight years in the Department of Correction. Hartman now appeals and presents two issues for our review, which we restate as:

> I. Whether the trial court abused its discretion in denying Hartman's motion for continuance; and,
>
> II. Whether Hartman's aggregate eight-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

Late in the afternoon on May 27, 2014, John Peterson ("Peterson"), assistant manager of the Bluffton Walmart, was conducting a routine store walk through when he noticed Hartman in the electronics department with two televisions in his cart. Peterson greeted Hartman, who appeared "very agitated" as he quickly rushed away from Peterson toward the hardware department. Appellee's Br. at 3. Associates in the electronics department told Peterson that Hartman had not paid for the televisions, so he followed Hartman at a distance.

Associates in the hardware department then notified Peterson that another man was "throwing" items into his cart, and when Hartman arrived at the hardware department, he began doing the same. Tr. p. 74. Peterson then followed both men to the store exit and after they crossed the point of purchase requested their receipts. Neither man acknowledged Peterson, so he again asked for their receipts. Hartman, still ignoring Peterson, responded to the other man, "[G]o,

go, go. . . [;] just go[!]" *Id.* Peterson watched the men maneuver the carts into the parking lot and quickly throw the merchandise into the trunk of a red Buick. Another assistant manager called the police as the men sped off with the items hanging out of the trunk. *Id.* at 75.

[5] Indiana State Police Trooper, Shane Neuenschwander ("Neuenschwander") was patrolling the area south of the Bluffton Walmart when he heard a dispatch about two white men, who had stolen merchandise from Walmart, leaving in a maroon Buick. Tr. p. 60. In his rear-view mirror, Neuenschwander saw a vehicle matching that description exit the store parking lot. He allowed the vehicle to pass him and observed two white men in the car and an open trunk with two televisions and power equipment hanging out. *Id.* Neuenschwander stopped the vehicle that Hartman was driving and explained the reason for the stop. Hartman stated that he had stolen nothing but admitted to Trooper Neuenschwander that he believed his driver's license was suspended. Tr. p. 62.

[6] Shortly thereafter, Officer Ferrell Swindell ("Swindell") of the Bluffton Police Department arrived. Hartman identified himself to Swindell. At first, Hartman offered conflicting stories about the merchandise in the car but finally admitted to Swindell that he had stolen the items. Tr. p. 69.

[7] The State charged Hartman with Class D felony theft and Class A misdemeanor driving while suspended. At the initial hearing on May 29, 2015, Hartman requested a speedy trial, despite the trial court's admonishment to Hartman that the shortened time to prepare for trial would disadvantage

Hartman's appointed counsel. The trial court set the trial for July 7, 2014. Hartman posted bond and was released on June 16, 2014. App. p. 96. On June 27, 2014, Hartman filed a motion for continuance of the jury trial, which the trial court denied. Appellant's App. pp. 100-01.

[8] On July 7, 2014, Hartman appeared with counsel for the jury trial but renewed his motion for continuance, explaining that counsel was not prepared for trial. Hartman also told the court that he wanted new counsel appointed. Tr. p. 26. The trial court denied Hartman's motion for continuance and did not grant his request to replace counsel. The trial court sought a brief recess, instructing all parties to arrive back in the courtroom at a particular time. Hartman failed to return. Officer Swindell testified that he saw Hartman get into a car and drive away from the courthouse. Tr. p. 47. Hartman's counsel presented Hartman's defense without Hartman present, and the jury found him guilty of both charges.

[9] During the habitual offender phase of the trial, the State sought enhancement of Hartman's charges by proving that Hartman was convicted of Class C felony forgery in 2006 and Class D felony theft in 2013. He also had a prior conviction for driving while suspended in 2012. The State presented evidence that Hartman's fingerprint records from the current arrest matched his fingerprints from the prior arrests in 2004 and 2011, which resulted in the 2006 and 2013 felony convictions. The jury found Hartman to be a habitual offender. The trial court then revoked Hartman's bond and issued a bench warrant for his arrest.

At the sentencing hearing on February 18, 2015, and with Hartman present, the trial court considered Hartman's two prior burglary convictions, forgery conviction, and five theft convictions. Tr. p. 160. Additionally, the court highlighted Hartman's misdemeanor convictions including: disorderly conduct, check deception, conversion, driving while suspended, complicity, intimidation, and false information. *Id.* The trial court also considered Hartman's failure to appear for trial. The court listed Hartman's criminal history and the most recent violations of pretrial release and probation as significant aggravating factors. *Id.* at 162. The court found no mitigating factors. As a result, Hartman was sentenced to three years for Class D felony theft with an additional four and one half years for the habitual offender enhancement. Hartman was also sentenced to a consecutive term of six months for the driving while suspended offense for a total sentence of eight years. He now appeals.

## I. Hartman's Denied Motion for Continuance

When a party moves for a continuance that is not required by statute, we review the trial court's decision for an abuse of discretion. *Zanussi v. State*, 2 N.E.3d 731, 734 (Ind. Ct. App. 2013) (citing *Flake v. State*, 767 N.E.2d 1004, 1008 (Ind. Ct. App. 2002)). An abuse of discretion occurs when the ruling is against the logic and effect of facts and circumstances before the court or the record demonstrates prejudice from the denial of a continuance. *Id.* Continuances to allow more time for preparation are generally disfavored in criminal cases. *Risner v. State*, 604 N.E.2d 13, 14 (Ind. Ct. App. 1992), *trans. denied*. "Such motions require a specific showing as to how the additional time

would have aided counsel." *Robinson v. State*, 724 N.E.2d 628, 634 (Ind. Ct. App. 2000), *trans. denied*.

[12] Hartman argues that the trial court abused its discretion in denying his motion for continuance because he was required to proceed to trial without ever discussing the merits of his case with his attorney. He argues that this was extremely prejudicial. However, Hartman requested and received a speedy trial under Ind. Crim. Rule 4(B)(1). At the time of Hartman's request the trial court warned Hartman that the request for a speedy trial might place his attorney at a significant disadvantage. Nonetheless, Hartman insisted that the matter be set for a speedy trial, so the court set the date for July 7, 2014, thirty-nine days after his initial hearing.

[13] Hartman filed a written motion for continuance on July 1, 2014, after the June 9, 2014, pretrial motion deadline. Hartman's motion for continuance specifically stated that Hartman "bonded out and was no longer entitled to a fast and speedy trial, his wife had serious, life threatening ailments and was scheduled for further treatment, plea negotiations were ongoing, and the State did not object to the request for a continuance." Appellant's App. p. 100. The trial court denied the motion, but Hartman renewed the motion at trial stating that his counsel did not have adequate time to prepare.

[14] Hartman's reasons for requesting a continuance were that he had posted bond, his wife's alleged illness, ongoing plea negotiations, and that the State had no objection to a continuance. When the motion was renewed at trial, Hartman's

counsel stated that he had not had adequate time to prepare for trial. However, he made no specific showing of what, if any, additional preparation was needed for trial. *See Robinson,* 724 N.E.2d at 634. Indeed, in light of the witnesses arrayed against him and his own confession, his counsel could do little on his behalf.

Simply said, Hartman requested a speedy trial, in spite of the trial court's warning that it would not allow his counsel adequate time to prepare for trial. He cannot invite the alleged error of refusal of a continuance for more and better trial preparation when he himself demanded a speedy trial despite the trial court's warning. *See Baugh v. State*, 933 N.E.2d 1277, 1280 (Ind. 2010). In addition, Hartman made no showing that he was prejudiced by the court's denial of the motion for continuance. For all of these reasons, the trial court did not abuse its discretion in denying Hartman's motion for continuance.

## II. Inappropriate Sentence

Under Indiana Appellate Rule 7(B):

> [We] may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.

When reviewing a sentence, our principal role is to "leaven the outliers" rather than necessarily achieve what is perceived as the "correct" result. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). We do not look to determine if the sentence was appropriate; instead, we look to make sure the sentence was not

inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008) (citing *Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind. 1996)). Therefore, the defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[17] The advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed in assessing the nature of the offense. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007). The "character of the offender" portion of the sentence involves consideration of the aggravating and mitigating circumstances and general considerations. *Clara v. State*, 899 N.E.2d 733, 735 (Ind. Ct. App. 2009).

[18] Hartman was convicted of Class D felony theft and Class A misdemeanor driving while suspended. On the date Hartman committed the offense, Indiana law provided that:

> [a] person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years with the advisory sentence being one and one-half years (1 ½).

Ind. Code § 35-50-2-7 (2014).

[19] The jury also found Hartman to be a habitual offender. Under Indiana law:

> [t]he court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentences for the underlying offense. However, the additional sentence may not exceed thirty (30) years.

Ind. Code § 35-50-2-8(h) (2014). The trial court sentenced Hartman to three years for the theft offense and enhanced that sentence by four and one half years for the habitual offender adjudication. Further, Indiana code section 35-50-3-2 provided that "[a] person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year. Hartman received a consecutive six-month term for driving while suspended.

[20] Hartman argues that nature of the underlying offenses does not justify the eight-year sentence imposed. He contends that the jury found that he stole televisions and power equipment from Walmart, that he was stopped by an Indiana State Trooper after leaving Walmart and admitted to stealing the items after identifying himself to police, that he notified the police that his driver's license was suspended, and all of the property was quickly returned to Walmart unopened.

[21] However, we must also assess the character of the offender, which in this case, as in most cases, is found in the history of prior crimes committed by the offender. The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, proximity, and number of prior offenses in relation to the current offense. *Bryant v. State*, 841 N.E.2d 1154, 1156 (Ind. 2006). Here, Hartman has an

extensive criminal history, especially offenses against the property of others, like the theft conviction here. At the sentencing hearing, Hartman admitted to convictions for check deception in 2003, burglary in 2004, conversion in 2004, forgery in 2004, and five prior convictions of Class D felony theft in 2003, 2005, 2008, 2010, and 2011. Tr. p. 146.

[22] In these past instances, trial courts have shown Hartman leniency and have given him opportunities for rehabilitation. For example, in 2006, Hartman was sentenced to four years for Class D felony theft then released on parole in 2007. One year later, Hartman violated the terms of parole by committing a new offense and returned to prison. *See* Appellant's App. pp. 121-22.

[23] Hartman argues that the trial court should have considered his education, service in the military, care for his wife with Crohn's Disease, and maintenance of close relationships with his adult children in assessing his character.[1] However, although Hartman received both his GED and Associate's degree while in prison, he still chose to attempt to make a living dishonestly. Additionally, no information in the record indicates that Hartman personally cares for his wife or helps support any of his six children.

[24] Further, Hartman has failed to appear in court on several prior occasions related to charges and convictions. In this case, Hartman left the courthouse

---

[1] Hartman argues that the trial court erred by failing to consider these factors. However, Hartman waived the mitigating circumstances argument by failing to cite to the proper abuse of discretion standard and by not developing the argument any further. *See* Ind. R. App. P. 46 (A)(8)(a).

and remained absent while his jury trial occurred because the trial court denied his motion for a continuance and did not allow for a change of counsel. For all of these reasons, Hartman's eight-year sentence was not inappropriate.

## Conclusion

The trial court did not abuse its discretion in denying Hartman's motion for continuance. Further, Harman's aggregate eight-year sentence imposed by the trial court was not inappropriate in light of the nature of the offenses and Hartman's character.

Affirmed.

Baker, J., and Bailey, J., concur.